WILLIAM P. FAIRBANKS *et al.*, Respondents, v. THE RICHARDSON DRUG COMPANY, Appellant.

St. Louis Court of Appeals, November 11, 1890.

1. **Sale : DISTINGUISHED FROM CONTRACT FOR WORK AND LABOR.** If a dealer contracts to furnish an engine to the lessee of a building and to set it in the building, referring to the engine as merchandise, and if the engine is to be thus set under the superintendence of the dealer, and, when set, will not become a permanent part of the building but merely a trade fixture, the contract is one of sale and not one for work and labor on the building.

2. ——— : **DESTRUCTION OF PROPERTY BEFORE DELIVERY: LIABILITY OF VENDEE.** The contract for such engine being one of sale, the vendee is not liable to the vendor, if, after the engine has been placed in the building, and been partially, but not completely, set by the vendor in conformity with the contract, and before it has been accepted or delivered to the vendee, it is destroyed by an accidental fire, which is attributable to a human agency but not to the fault of either party. (*Haynes v. Second Baptist Church*, 88 Mo. 292 ; s. c., 12 Mo. App. 536, *distinguished.*)

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

REVERSED.

*Rowell & Ferriss*, for appellant.

Plaintiffs cannot recover, because this is a case of the sale of a chattel not yet delivered or accepted, the title to which was in plaintiffs at the time of the fire. *Swallow v. Emery*, 111 Mass. 355 ; *Randle v. Stone*, 77 Ga. 501 ; *Thurston v. Ins. Co.*, 17 Fed. Rep. 127 ; *Graves v. Doane*, 11 N. J. Eq. 96 ; Story on Sales [ 4 Ed.] sec. 233 ; *Appleby v. Meyers*, 2 Com. Pl. L. R. 650 ; *Eschberger v. Miller*, 20 Md. 332 ; *Brumby v. Smith*, 3 Ala. 123 ; *Pierce v. Cooley*, 56 Mich. 552 ; *Carter v. Wallace*, 35 Hun. 189 ; *Hunt v. Wyman*, 100 Mass. 198 ; *Lamb v. Crafts*, 12 Met. 353 ; *Lee v. Griffin*, 1 Best & Smith, 272 ; 1 Benjamin on Sales [ Am. Notes by Corbin] sec. 102 ; *Cook v. Millard*, 65 N. Y. 352.

*Hiram J. Grover*, for respondents.

This case is clearly within principle laid down in *Haynes v. Church*, 12 Mo. App. 536 ; s. c., 88 Mo. 292.

THOMPSON, J.—This action is brought to recover the reasonable value of certain goods and materials alleged to have been sold, and of certain work and labor alleged to have been done by the plaintiffs at the special instance and request of defendant. There is a second count in the petition which we do not think it necessary to consider, because the decision of the case must depend upon an application of the law to an undisputed state of facts. The defendant pleaded, and the plaintiffs by reply admitted that, on the tenth day of December, 1888, the plaintiffs and the defendant entered into a special contract with each other, of which the following are the substantial portions :

"ST. LOUIS, 12–10–1888.

" *To Richardson Drug Co.*, *St. Louis, Mo.*

"GENTLEMEN :—We propose to furnish you, in good order, set complete in your building, one Westinghouse, automatic, cut-off engine with cylinders, eight

inches bore and seven inches stroke. The engine, at three hundred and sixty revolutions per minute under eighty pounds' pressure and with steam and exhaust pipes three inches in diameter, is guaranteed to develop twenty-five indicated horsepower, and to be supplied with the following wheels, viz., one fly-wheel, one pulley of suitable size to drive dynamo at requisite speed, set complete, including foundation and piping, ready for use.

" We will also furnish with said engine one throttle valve with flanges for steam and exhaust pipes, wrenches, one first-class sight-feed lubricator and oil separator.

" For the above engine, with other merchandise as specified herein, you to pay to us four hundred and twenty ( $420 ) dollars cash.

" We guarantee it to work as economically as any other engine of like type, working under the same circumstances and conditions.    Respectfully submitted,

" FAIRBANKS & CO.

" T. C. JOHNSON.

" ( The engine to be used for electric lighting.)

" Accepted :

" RICHARDSON DRUG CO.,

"By JAMES RICHARDSON, JR.,

" Secretary."

On the reverse side there was some printed matter with blank spaces for dates, signatures and other matter unfilled, which we do not understand the parties to regard as being any part of the contract. At least we hold, as matter of interpretation, that it is not.

Immediately after the acceptance of this proposal, plaintiffs placed an engine of the character specified in the proposal in the basement of defendant's building, at the corner of Fourth and Clark avenue, in this city. This building was a six-story building, occupied by

defendant as tenant for ten years under a lease from Edward J. Gay, the owner; the lease had about six years to run. Defendant was conducting a wholesale drug business in the building.

This engine was to be used in connection with the electric plant involved in the suit of the Pike Electric Company against this same defendant, now before the court.

On the thirty-first day of December the boiler had been set up in the basement of defendant's building, by making an excavation in the ground, by making in the excavation a solid foundation of brick laid in cement, by placing on this foundation a capstone level with the surrounding ground, and by fastening the engine, by means of bolts and screws, to this capstone, in such manner that it could have been removed, by taking off the nuts, without injuring it; so that, when completely put up, it would have been so attached that it could have been detached, and removed, and used equally well in some other building.

The building and contents, including this engine, were completely destroyed by an accidental fire on the early morning of January 1, 1889. At the time of the fire the engine stood on its foundation not connected with the boilers or other machinery, and was not set complete. It was admitted by the plaintiffs that the contract was not completed at the time of the fire.

The fire broke out in the building itself in a manner entirely unknown and unexplained by the testimony. There was no evidence, on the one hand, tending to show that it was the result of any negligence or other fault on the part of the defendant, or of anyone in its employ; nor, on the other hand, that it was the result of lightning or of any other overruling cause, such as the law designates as a *vis major* or the act of God. It did not reach the building from any external source, but broke out in the building itself, and, like the fire in

the case of *Haynes v. Second Baptist Church*, hereafter considered, was presumptively the work of some human agency.

The work was done under the superintendence of the plaintiffs, and the defendant had nothing to do with the same ; though the defendant's secretary appears to have given some immaterial direction to the workmen, such as, under the circumstances, a man might naturally do. But nothing was said or done by anyone for the defendant, which could amount to an acceptance of the property on the theory of the contract being a sale. The property was not insured by either party. It was usual for the plaintiffs to make a trial of an engine after it was set up complete, and to make such changes as might be necessary to insure its perfect operation, which had not been done in this case. It required some pieces of pipe, which were not on the premises, to complete the connections and finish the contract. In short, the evidence indisputably was that the contract was not completed, and that the engine had not been delivered to, nor accepted by, the defendant at the time of the fire. It is equally undisputed that the plaintiffs had no control over the building beyond what was necessary to carry out their contract, and that the defendant had no control over the operations of the workmen in setting up the engine.

On this state of case, the court refused a declaration of law, requested by the defendant, that the plaintiffs were not entitled to recover, and gave judgment for them, in an amount which is admitted to be correct, in case they are entitled to recover at all.

We have come to the conclusion that, on the foregoing state of facts, the plaintiffs are not entitled to recover. The only reliance of their counsel is in the decision of the supreme court, affirming this court, in the case of *Haynes v. Second Baptist Church*, 88 Mo. 285 ( affirming s. c., 12 Mo. App. 536 ) ; and they frankly admit what is very clear to us, that, unless their case

falls within the principle of that case, they are not enti-
tled to recover.

We can see grounds for a very material distinction
between this case and that. In that case it is apparent
from the facts themselves, and from the language of the
judges in dealing with them, that the case was regarded
as a contract by a company of mechanics and material-
men for the doing of *work and labor* on, and the supply-
ing of *materials* to, a building, which work and labor
and materials, when done and supplied, became a perma-
nent part of the building. To make this clear, we need
only to italicize a few words in the statement of facts
and conclusions of the judges, who delivered the opin-
ions of the supreme court and of this court. Judge
Bakewell, in giving the opinion of this court, said:
"Defendant was erecting a house of worship in St.
Louis. It let out the work to different *contractors*,
having separate contracts with the *mason, carpenter*
and other *mechanics*. The general direction of the
work was under the control of an architect and super-
intendent employed by defendant. Defendant kept
the building insured, increasing the insurance from
time to time as the building progressed, insuring far
enough ahead to cover any work after it was done. On
January 2, 1879, the building caught fire from some
unexplained accident. The answer alleges that this
was without the fault or negligence of defendant, and
the reply denies this, though it admits that the fire
was accidental. The fire destroyed the church and
everything in it.

"The written contract between the plaintiff and
defendant provides that plaintiff shall *make, finish* and
*put up complete*, furnishing all *labor* and *materials*,
the pews in the audience-room and in the gallery, the
pulpit, and the screen over the pulpit and baptistery,
and the organ front,—the *work* to be of a described
character and quality, and subject to the approval of
the architect of defendant,—for the sum of forty-eight

hundred dollars, to be paid on the completion and acceptance of the work. The *work* is to be put up complete on or before December 1, 1873, under a forfeit of ten dollars a day for every day's delay beyond that time."

In stating the reasons of this court for its conclusion, he used the following language: "Where the owner of the property retains possession and contracts for *work* to be done upon it while in its custody, there is, we think, an implied obligation resting upon him to have it in readiness for the *work* to be performed upon it, and the plaintiff was not bound to provide in the contract for the default of the other party in the matter of this obligation. So far as regards an impossibility arising from the act of God, neither party need provide against that in his contract; but from an impossibility arising from human agency, and an accidental fire making it impossible to finish the building in time to receive the *wood-work*, it would seem that the owner and the occupier of the building, rather than one having access to it, as *one of many contractors employed in its repair or construction*, should provide."

In like manner Judge BLACK, in giving the opinion of the supreme court, stated thus the facts: "Plaintiff and defendant, both corporations, entered into a contract, by which plaintiff agreed to *make, finish* and *put in place* certain *fixtures* in defendant's building at St. Louis. The work was to be done according to plans, to the entire satisfaction of the superintendent and building committee, and to be completed by the first of December, 1878, under a forfeiture of ten dollars for each day's delay. As a full compensation, defendant agreed to pay forty-eight hundred dollars on the completion of the *work* and acceptance of the same. The building was, without fault of either party, destroyed by an accidental fire on January 2, 1879. At that time the pews in the gallery and pulpit screen had been attached to the building. The other *fixtures*, including

the pews for lower or audience-room, were in the build-ing on the floor, and workmen were engaged in putting them in place. The building was in the possession of defendant, had been erected by separate contracts for the different departments of work, and had been by defendant, from time to time, insured. This is a suit for the value of the *work* and *materials* in place and on the floors. The defense is a failure to *complete the work* according to the contract."

In the same line of thought Judge BLACK, in stat-ing the reasons of the court for its conclusions, said : "Now in this case the *fixtures* were, it is true, to be put in place and completed to the satisfaction of the building committee, and to be paid for only when com-pleted. But the contract is based upon the assump-tion, that defendant would have its edifice erected and ready to receive the *work*. All this was a condition precedent to the performance of the contract by the plaintiff. The implied contract on the part of the defendant was to have and keep the building ready to receive these *fixtures*, and to furnish room therein for them, for such length of time as would reasonably be required to put them in place. The agreement to do all this is as much a part of the contract, as if expressed therein in terms. This the defendant failed to do. Besides this, the house was in the possession, control, care and custody of defendant, and the plaintiff had nothing to do with its protection, further than to be without fault as to its own work. The contract was not, therefore, an absolute one *to do the work* at all hazards, but it was dependent upon the assumed and implied conditions before stated, conditions which the defendant was to perform and which it did not perform. According to the weight of the American authority, such a contract is severable to the extent that the *mechanic* may recover for *work* done up to the time of the fire."

In quoting from the opinion of the supreme court, we have italicized the word "fixtures," as well as other characteristic words, because the counsel for the plaintiffs in this case lay some stress on the use by the learned judge of that word ; but it seems plain that he did not intend to use the word in the sense of a chattel so attached to land as not to become a part of it, and that the idea that those attachments were removable, and that the doctrine laid down by the court was, therefore, applicable in the case of a *sale*, was one which never entered into the mind of that court, any more than of this court. It is plain that the conception of the supreme court, and of this court, in that case was that the plaintiff, who was one of several contractors, and the defendant entered into contracts to do work and to furnish materials necessary to the completion of a certain building, and that, while some of the materials furnished might not inaptly be designated as fixtures, for want of better word, yet the contract, in its entire scope and meaning, was a contract for the doing of work and labor as distinguished from a contract of sale. This will more clearly appear from the illustrative cases on both sides of the question, which are examined and commented upon in both of the opinions. In no place is it stated that the court is dealing with a contract of sale, or that the rule, which the court invokes, is applicable to such a contract. All the cases relied on by the supreme court and by this court, as constituting the "weight of American authority," in favor of their conclusions, were distinctly cases of contracts for work and labor, and not contracts of sale. *Hollis v. Chapman*, 36 Tex. 1 ( materials and carpenter work on brick buildings ); *Cleary v. Sohier*, 120 Mass. 210 ( contract to lath and plaster a building at so much per yard ) ; *Cook v. McCabe*, 53 Wis. 250 ( contract to do a part of the work and furnish a part of the materials for the building of a house ); *Rawson v. Clark*, 70 Ill. 656 ( contract with the owner of a building to

put into it certain iron works); *Niblo v. Binsse*, 1 Keyes (N. Y.) 476 (contract to put steam pipes and heaters into a building, and treated by the court as a contract to perform work and labor). On the contrary, it is a part of the common learning of the profession, that, in a contract of sale, unless it is otherwise specified, the risk of loss by accident remains with the vendor until delivery.

All the distinctive characteristics of the contract before us make it a contract of sale. The plaintiffs did not agree with the defendant, as did the plaintiffs in *Haynes v. Second Baptist Church*, "to *make, finish* and *put up* complete, furnishing all *labor* and *materials*," certain parts of a building in process of erection; but they agreed "to *furnish* you in good order, set complete in your building," already erected and occupied, a certain engine, together with certain other things, and "for the above *engine* with other *merchandise*, as specified herein, you to pay us four hundred and twenty dollars cash." If the church in the *Haynes case* had been completed according to the contract and afterwards sold, all that plaintiffs agreed to do to the building would have passed by the sale as parts of the realty. But this engine, as between the plaintiffs and the landlord, was a mere trade fixture, personal property, which they undoubtedly would have had the right to remove at the expiration of the lease. Nor, if the plaintiffs had been the owners of the building and of the lot of ground on which it stood, and had sold it, would this engine have passed by the sale without special words in the deed. This is plainly a case of sale, and not merely a contract for work and labor, within the meaning of the leading case of *Lee v. Griffin*, 1 Best. & S. 272, where the contract was to supply a set of artificial teeth, and vendee died before delivery, and yet it was held, in an action against the executor, a contract of sale within the meaning of the statute of frauds, and not a contract for work and labor, so that,

not being in writing, it was void.    For myself, I do not believe that to be a sound decision ; but it has been adopted as the law by this court, and the question is at rest with us. *Burrell v. Highleyman*, 33 Mo. App. 183. There the teeth could not be used in the mouth· of any other person ; but here the engine could have been removed, and used as well elsewhere as in the building of the defendant.    But, outside of the. rule in *Lee v. Griffin*, and under any conception of the law with which I am acquainted, I should regard this as a contract of sale, and not a contract for work and labor.

It is unnecessary to remand this cause, as the undisputed facts show that there is no right of recovery.    The judgment will, therefore, be reversed merely. All the judges concur.