O. H. LUMRY, Respondent, v. ANDREW KRYZMARZICK, Appellant.

(184 N. W. 254.)

**Sales — delivery indicates intention to pass title, but is not conclusive of immediate transfer.**

1. In an action to recover the purchase price of a second-hand tractor plowing outfit alleged to have been sold and delivered to the defendant, where the evidence was conflicting as to the place where delivery was to be made—whether upon plaintiff's farm where the tractor was situated when the contract was made or upon the defendant's farm some twenty-five or thirty miles distant—but where there was no dispute as to the obligation assumed by the seller to put the outfit in fair working condition for plowing; and where the evidence showed that the engine had never been put in fair working condition, it is *held*:

Delivery, in the sense of change of physical possession from the seller to the buyer, while a strong indication that the parties intend to pass title, is not conclusive of an intention to transfer title immediately.

**Sales — where seller was to repair after delivery, inferred that title was not to pass prior thereto.**

2. Where, after delivery to the purchaser in the circumstances disclosed in the evidence, work of a substantial character remained to be done by the seller to put the property in a condition in which it would be of some use to the purchaser, it is a fair inference that the parties did not intend that title should pass until this work was done.

**Sales — buyer may defend for seller's breach notwithstanding prior failure to rescind.**

3. Where title has not passed under a contract for the sale of specific property, and where the seller has been guilty of a substantial breach of the contract, the purchaser may defend an action for the price notwithstanding his prior failure to effect a rescission of the contract.

Opinion filed June 22, 1921. Rehearing denied September 10, 1921.

Appeal from the District Court of McLean county, *Nuessle,* J.

Reversed and remanded.

*R. L. Fraser* and *J. A. Hyland,* for appellant.

If under a contract for the sale of specific goods the seller is bound

to do something to the goods for the purpose of putting them in a deliverable state, that is, into a condition in which the buyer is bound to accept them unless a different intention appears; the property does not pass until such thing is done. Simpson v. Perfett, 36 N. D. 526; 162 N. W. 900.

Since the property was not as warranted, which is a fact found by the court, it was a bar to recovery for the purchase price. Simpson v. Perfett, 36 N. D. 526; 162 N. W. 900; Holbert v. Weber, 161 N. W. 560 (N. D.) ; D. M. Osborn & Co. v. Martin, 56 N. W. 905, (N. D.).

And no recision is necessary. Nat'l Cable Mfg. Co. v. Filbert, 140 N. W. 741, (S. D.) ; 13 C. J. 619.

*J. E. Nelson,* for respondent.

BIRDZELL, J. This is an appeal from a judgment in favor of the plaintiff and from an order denying the defendant's motion for a new trial. The action is one to recover the purchase price of a secondhand gasoline tractor plowing outfit alleged to have been sold and delivered to the defendant in the spring of 1919. It was tried to the court without a jury. The facts are as follows:

The plaintiff is a dealer in implements at Garrison, N. D.; the defendant, a farmer living in the vicinity. In the fall of 1918, the defendant, being prospectively interested in the purchase of a tractor for the following year, talked with the plaintiff concerning the purchase of a 1912 model 45 horse power Mogul tractor which the plaintiff owned. The tractor had been acquired secondhand and was then located 8 or 9 miles south of Douglas upon the plaintiff's farm and some 25 or 30 miles distant from the defendant's farm. They also talked of the purchase and sale of a 10-bottom lever lift Oliver engine plow which was at the time situated at Roseglen, about 16 miles from the location of the engine. The plaintiff and defendant went to look at the engine. It had not been used that year, but the plaintiff stated, in answer to a query as to whether it would run, that one McDonald, who had previously run it for the plaintiff, said that he could start it in 15 minutes. The defendant inspected the machine particularly with reference to its bearings which, in his opinion, were not badly worn. Negotiations were renewed in February or March of the following winter, and some time in March an agreement was reached whereby the defendant agreed to pay $1,600 for the engine, the plows, and a cook car; the plaintiff agreeing to turn the engine over to the defendant

"in good working order." The evidence is conflicting as to the portion of the agreement relating to the delivery of the engine; the plaintiff contending that he agreed to deliver it upon his own place where it was then standing, and the defendant that delivery was to be made upon his farm which, as stated, was some 25 or 30 miles distant; and that the plaintiff not only agreed to do this but to start plowing with it. The plaintiff, at the defendant's request, made arrangements to have the plows moved to a certain corner where they could be picked up by the engine en route to the defendant's farm. Some time after the deal was made (about April 20th), the plaintiff sent Frank McDonald out to get the engine in shape for delivery. The ignition system was lacking, the plaintiff having taken off the magneto to preserve it. In making the sale he agreed to repair the magneto, or, if it could not be made to work properly, that he would supply a new Atwater-Kent system.

McDonald, with a helper, worked on the engine 8 or 10 days before attempting to move it on the road to the defendant's place, and it required approximately 10 days more to move the engine to the defendant's farm. McDonald accounts for the time consumed on the road by stating that the weather was rainy, the roads muddy, and that they got stuck several times. The defendant sent for the extension arms and other parts that could be more conveniently hauled than taken with the tractor. McDonald was paid for the work done on the tractor by Lumry, the plaintiff, and it seems that he made out a separate bill to the defendant Kryzmarzick for moving the machinery amounting to about $165, which account has never been paid by the defendant and is assigned to the plaintiff in this action but not included in the complaint. McDonald purchased from the Standard Oil Company some kerosene and gasoline needed for moving the machine, and directed it to be charged to the defendant. The defendant denies that he authorized this, but he paid the bill. When the machinery reached the defendant's farm, the plows were hitched on and McDonald started to plow. After going about 10 rods the engine stopped. McDonald says this was because the plows were not scouring, but the defendant contends it was because the engine did not have sufficient power to pull the plows. There were not as many plows attached as the engine was supposed to be capable to pulling. The engine had thus far been run on batteries, and as McDonald was leaving he took them off to use on another engine belonging to the plaintiff. Another ignition system was later put on. At the time McDonald left the engine with the defendant, he stated

that there was a loose stud bolt on one of the cylinders, but that it would give no particular trouble and advised leaving it until the season's work was done, as it was then getting late. This stud bolt was later chiseled out by one Krause, a man the defendant had hired to operate the engine. One cylinder was found to be cracked and leaking; that is, water was leaking from the water jacket into the combustion chamber. It is claimed by the plaintiff that this crack was caused by the chiseling operations, and by the defendant that the crack was there before any work was done to remove the stud bolt; one of the plaintiff's witnesses testifying that he saw the crack before the stud bolt was chiseled out. The plaintiff meanwhile had hired one Kitts to put an Atwater-Kent ignition system on the tractor, and while he was working with it, it became apparent that a new cylinder was required. The defendant requested the plaintiff to supply this cylinder and claims that he told the plaintiff that if he did not do so the deal would be off. The plaintiff agreed to furnish it. A cylinder was supplied, but it did not fit, and before it could be put on several inches had to be cut off one end and adjustments made for connecting it with the water pipes. It had originally been difficult to start the engine, a Ford automobile having been found useful for this purpose. But after the new cylinder was put in, it apparently could not be started with a small tractor capable of pulling six plows which the defendant attached to it by a belt for the purpose of turning the engine over. The tractor in question has not been used since, and the cook car has been blown to pieces. The defendant, through his attorney, very soon after the demonstrated inability of the tractor to work, served upon the plaintiff a purported rescission notice which was defective in that it did not include an offer to return the cook car. Soon after the settlement date this action was brought.

The trial court found in substance that the plaintiff warranted the engine to be in good working order; that the place of delivery agreed upon was the plaintiff's farm; that delivery was made thereat according to the terms of the contract; that the defendant accepted the property and removed it to his premises; that the engine was not at the time in good working order as warranted; and, as a conclusion of law, it was found that while there was a breach of warranty there was not a sufficient recission of the sale contract. Judgment was entered for the plaintiff but without prejudice to the right of the defendant to bring an action for damages for breach of warranty.

We are of the opinion that the trial court erred in holding that there

was an acceptance of the engine by the defendant. While the testimony is not harmonious on the subject as to where delivery was to be made, it is notable that the plaintiff testifies to no particular conversation with reference to this subject; his testimony consisting largely of the conclusion that he was to make delivery upon his place. The defendant testifies specifically that the agreement was that the engine was to be delivered to him upon his farm in fair working condition for plowing. It is to be noted in this connection that the engine was taken to the defendant's place by the man whom the plaintiff had employed to repair it. These repairs must have been somewhat extensive, for they required at least eight days of the time of the repair man and the helper. It is a matter of some significance, too, that though this repair man was working for wages at different jobs, he never pressed his claim upon the defendant, but assigned it to the plaintiff, and the plaintiff has not seen fit to include it in this action, though it amounts to about $165. The trial court laid stress on the fact that the defendant paid for the kerosene and gasoline that had been charged to him as showing that the moving of the engine was his obligation. To our minds this is not a strong circumstance, as the amount involved would be so sma'l that the defendant might not care to protest its payment. The plaintiff, it must be borne in mind, had the burden of proof upon this question of delivery, and with the evidence in the condition it is, we are of the opinion that this burden was not sufficiently sustained.

The evidence, however, is conflicting, and the trial court found in favor of the plaintiff. It might therefore be reasonably urged that we should not disturb the finding of the trial court. Even though superior weight be given to the opinion of the trial court, in so far as credibility is involved, still we are of the opinion that the judgment is erroneous; for, in view of the facts which are clearly established, the case does not properly turn upon the technical circumstance as to where delivery was to be made or as to who was to pay the expenses of moving. Admittedly the engine, at the time it was moved, was not equipped with an ignition system. The plaintiff admits that he agreed to install the magneto in proper working condition or furnish a new Atwater-Kent system. Up to the time the machine was left on the defendant's place neither had been supplied, and consequently there was lacking a vital part of a gasoline or kerosene engine. It had been moved with batteries belonging to the plaintiff, and these were promptly taken for use on another of plaintiff's engines. By the time an ignition

system was installed, the crack in the cylinder had been discovered, and the evidence concerning this crack raises a strong probability that it had been caused by frost. At least, this probability is as strong as that it had been caused by the removal of the broken stud bolt. The outstanding ultimate fact is that no tractor has been supplied to the defendant capable of doing satisfactory work plowing or in fair working condition for plowing. Whether the engine was in proper condition for plowing could not readily be determined by its performance on the road while moving, and it would hardly be a fair presumption that the defendant accepted it for this purpose with an ignition system lacking and with a cracked cylinder.

The supplying of these parts was clearly a condition precedent to the passing of title to the defendant, and any acts of his by way of participation in transporting the machinery or in changing the physical position for the purposes of convenience in facilitating a full performance of the contract cannot be said to constitute a waiver of their effect as conditions precedent. It is not shown that he made any inspection of the engine after the repairing was supposed to have been done and before McDonald started on the journey to his place. Clearly, he did not constitute McDonald his agent for the purpose of accepting the engine. At most, his authority on behalf of the defendant was limited to the mere transportation of the machinery to his place. McDonald indisputably was employed by the plaintiff to put the engine into deliverable condition, and any judgment he exercised with reference to its running condition would be a judgment exercised on behalf of the plaintiff, not the defendant. Certainly McDonald was not constituted both judge and jury to bind both parties by his action. There is, in fact, no evidence that the defendant ever accepted the engine in its present condition or that he was willing to accept it until it was rendered capable of doing the work for which the plaintiff agreed to supply it. The burden of putting it in that condition remained all the time on the plaintiff, and this burden amounted to a condition precedent to the passing of title. And, as stated, in our opinion its effect as a condition precedent is not modified or waived by any participation of the defendant in the physical delivery of the property. It is true that delivery is one of the strongest circumstances indicative of intention to transfer title immediately. Williston on Sales, § 265. But where delivery of physical possession is made only as a step in the performance of the contract and for the purpose of better enabling the seller to perform his remaining obligations, the delivery is conditional only and does not control the pass-

ing of title. And this is particularly true where the thing delivered is not capable of being used by the buyer without a more complete fulfillment of the seller's obligations. See Kitson Machine Co. v. Holden, 74 Vt. 104, 52 Atl. 271.

Since, in our opinion, title did not pass to the defendant, it is immaterial whether the contract was properly rescinded or not. The notice of purported rescission which was promptly given was at any rate sufficient to apprise the plaintiff that the defendant refused to recognize the contract as being any longer binding upon him in view of the failure to perform on his part.

For the reasons stated, we are of the opinion that the judgment in favor of the plaintiff is erroneous, and it is reversed. The case is remanded, with directions to enter a judgment of dismissal; defendant to recover his costs.

ROBINSON, C. J. and CHRISTIANSON and BRONSON, JJ., concur.

GRACE, J., concurs in the result.