MASSEY-HARRIS COMPANY, RESPONDENT, v. CHICK QUICK, APPELLANT.
—42 S. W. (2d) 47.

Kansas City Court of Appeals.   April 6, 1931.

*Frank Petree* and *Samuel Feller* for respondent.

*H. T. Alkire, A. M. Tebbels* and *Eastin & McNeely* for appellant.

BLAND, J.—This is a suit in replevin. At the close of all of the testimony the court instructed the jury to find for the plaintiff on plaintiff's cause of action and against defendant on the latter's counterclaim. A verdict was returned accordingly and judgment entered thereon. Defendant has appealed.

The facts show that on June 7, 1928, defendant signed a written order furnished by the plaintiff and addressed to it for a wheat combine. The order recites: "You will please ship to yourself in care of Chick Quick at Curzon Switch near Forest City on or about the at once, day of 1928, the following:—1 Massey-Harris No. 6 Reaper-Threshers, 10 ft., complete with Auxiliary Engine and Tractor-Hitch @ $1570. Forecarriage." The order further recites that defendant agreed to receive the machinery ordered immediately upon its arrival at the railroad station, "subject to the warranty and agreements and all conditions" printed in the order and to pay the freight amounting to $38.75.

The order further recites that the vendor warranted the reaper-thresher in question to be well made and of good material and, if properly operated and cared for, to be capable of doing good work, conditions of field and crop considered; that the warranties made were upon conditions that the machinery should be placed in use and tried out as soon after delivery thereof as was reasonably possible; that notice of any defect or breech should be given to the vendor by registered mail, particularly describing the same and specifying the time of its discovery; that such notice should be given within four days of the discovery of the defect or breach and that the defect or breach, to be covered by the warranty, should occur within six days after the first use of the machinery. The order then recites that if a remedy could not be suggested by letter, reasonable time should be allowed the vendor to send one of its representatives to remedy the defect, the purchaser to render all friendly assistance necessary and if such representative failed to make the machinery fulfill the warranty, the purchaser should give immediate notice by registered mail or telegram to the vendor, stating specifically all the complaints, allowing it ample time to send an expert to the machinery; that "the use of any machinery ordered, after six days from the first starting thereof, or the failure to give notice within six days of the first starting thereof of any defect therein or the failure to return the machinery stipulated herein shall be deemed a fulfillment of said warranty and evidence of a full satisfaction by the" purchaser "and a waiver of all claims whatsoever against the vendor."

The order further recites:

"It is expressly agreed and understood that tender to the purchaser by the vendor, or the vendor's authorized agents or employees, of

the machinery hereinabove described, shall constitute a complete and true delivery of said machinery to said purchaser." . . .

"It is expressly agreed and understood that the title, ownership, and right of possession all the machinery hereinabove described shall remain in the vendor until the full purchase price thereof is paid in money. If notes are taken as provided in this contract, the same shall not be considered as payment, but simply as evidence of the indebtedness."

To cover the purchase price of the machine defendant executed two notes in favor of plaintiff, one in the sum of $700, due August 1, 1928, and one in the sum of $870, due August 1, 1929. The $700 note was secured by a chattel mortgage on defendant's one-half interest in 145 acres of growing wheat.

The petition alleges that the notes referred to were in default and plaintiff thereby became entitled to the possession of the wheat and that plaintiff was the owner of the combine, all of which were wrongfully detained by defendant, and prayed judgment for the recovery of their possession and $100 damages for their taking and detention.

The answer denies that defendant had or ever had in his possession the combine and states that plaintiff is entitled to the possession of the combine but not the wheat; that the value of the wheat is $3,000; that defendant had been damaged by the taking of the latter and its detention in the sum of $1500. The answer also sets up a counterclaim based upon the failure of plaintiff to furnish a combine of the character described in the contract or order; that as a result thereof and the waiting upon plaintiff to furnish such a combine defendant "was obliged to permit his whole wheat crop to become overripe, and in a condition whereby it was wasted, and shattered out of the hull, so that when after the failure of plaintiff to deliver said machine, . . . defendant attempted to harvest it by other methods, a large proportion of his crop was wasted and lost to him; that he lost not less than fifteen bushels per acre upon his entire crop because of said plaintiff's failure to furnish defendant with the reaper-thresher that would harvest his crop, as plaintiff has agreed and warranted that it would do, which said wheat" was of the market value of $3500, for which defendant prayed judgment.

The reply consists of a general denial and an admission of the contract set up in the answer. The reply further alleges that the notes were executed in accordance with the terms of the contract; that they were not taken in payment of the machinery but only as evidence of defendant's indebtedness to plaintiff. The reply, also, sets forth *verbatim* several pages of the order or contract and alleges that defendant failed to comply with the provisions of the contract with respect to notice of the failure of the machine to comply with the warranty and that defendant "wholly failed to carry out any of the conditions of said contract hereinafter set out, and wholly failed to

pay the purchase price or any part thereof." The reply further alleges that defendant continued to use the machine after the expiration of six days after it was first started; that he failed to return the machine to the railroad station at Forest City; that by said acts defendant accepted the machine as in full compliance with the contract and in fulfillment of the covenants of the warranties contained therein; that "defendant in and by said contract waived and released plaintiff from all claims for damages set out in this (his) counterclaim; that by the terms of said contract the defendant is estopped from claiming any of the damages set out in his counterclaim."

The testimony on the part of the defendant tends to show that during the latter part of June, 1928, plaintiff shipped to him a Massey-Harris No. 6 Reaper-Thresher to Curzon Switch, a siding of the Burlington Railroad in Holt County; that defendant went to the station, found that the machine had been shipped largely in a knocked down condition, consisting of boxes, crates and bundles, and that it was required to be assembled and put together before it could be used; that he put the parts upon his wagon, hauled them to his home and stored them in his barn; that sometime later a Mr. Dunbar, a representative of plaintiff, came to defendant's farm to assemble the machine. This occupied several days and no attempt was made to cut the wheat until the 13th day of July. Dunbar stated to defendant that the wheat was not ripe enough and did not decide that it was in condition to cut until the last named day. At that time the harvest in the neighborhood was entirely over and the neighbors were threshing out of the shock.

The machine in question was designed to harvest and thresh wheat in one operation and was drawn over the field upon trucks moved by a tractor. The trucks were solely for the support of the machine. The traction from the truck wheels was not communicated to the machinery, but it was operated by an auxiliary gasoline engine which was a part of the machine and operated independently of the truck wheels and the tractor.

On the 13th day of July Dunbar and one Davis, representatives of plaintiff, started to cut defendant's wheat with the machine. Dunbar and Davis, assisted by defendant and a tractor, owned by defendant and operated by an employee of the latter, drove the machine into the wheat field in the afternoon. During the whole of that afternoon they succeeded in making but one round of a fifty-five acre field. The machine would choke up and the carrier would not elevate the grain to the threshing apparatus. The carrier would stop or slip and the grain would pile up and go into the threshing apparatus all "at once" and cut off the cotter keys and stop the machine. The re-cleaner would not work and it was taken off and laid in the field. The pipes that led to the re-cleaner were then stopped up with burlap

sacks and the grain was run without re-cleaning into the bin. Later the straw spreader was taken off and no attempt was made thereafter to use it, with the result that the straw that had passed through the machine was left in piles and bundles on the ground, which later interfered with the plowing of the field.

Dunbar and Davis continued their efforts but were never able to get the machine adjusted. They did not replace the recleaner or straw spreader. Defendant's evidence shows that the machine wasted a large portion of the wheat it attempted to cut; that the grain would accumulate on certain parts of the machine and then fall from there to the ground. The effort of Dunbar, assisted by Davis, to make the machine work continued until about August 20th, when they went away and left it and did not return.

The machine was never operated nor attempted to be operated in the absence of plaintiff's representative. Before they attmpted to use it to harvest the wheat defendant tried to start it up in his barn lot but was unable to do so and thereupon communicated with the local dealer at St. Joseph, who discovered that defendant had thrown the switch the wrong way. Plaintiff's representatives at no time pronounced the machine complete nor did they ever tender it to defendant as complying with the contract. During the time the machine was in operation it cut over ninety acres of defendant's wheat but it did not perform properly. Defendant cut thirty-five acres of the grain with his binder. Quite a bit of the grain was not cut at all.

Defendant did not at anytime, while the efforts to make the machine work were in progress, notify plaintiff that the machine was not operating according to the warranty and did not write to plaintiff or the local dealer concerning the failure of the machine until August 27, 1928, when he wrote to Bottoroff-Campbell, the local dealer in St. Joseph, describing its failure and notifying them that he was keeping the machine for their disposition. This letter was forwarded to plaintiff who received it on September 1st. Sometime after plaintiff's representatives abandoned the machine in the field defendant took it and put it up in his shed, thus getting it out of the way so he could plow his land. He did not at any time take the machine back to Forest City or Curzon Switch.

The court sustained plaintiff's objection to defendant's offers of proof tending to show the latter's damages, which he, in his counterclaim, alleged he suffered by reason of the failure of plaintiff to furnish the character of machine ordered.

Plaintiff's evidence tends to show that the machine worked properly and that the only trouble defendant had was caused by his field being wet and soft, causing defendant's Fordson tractor to mire down and that after the dealer furnished a more powerful tractor the machine was pulled through the field without further or other complaint; that during the operations defendant promised the local dealer to pay

the freight and did not object to the machine until he was requested to pay the $700 note.

Defendant admitted that the Ford tractor that he furnished mired down in some parts of the field, but stated that only a part of his field was wet enough to stall the tractor and that the machine did not work properly even when the tractor was pulling it; that he borrowed another Fordson tractor from a neighbor and that with the two Fordson tractors they had no trouble at any time pulling the machine but that the latter failed to work in the particulars we have described; that he returned his neighbor's tractor because, among other things, the dealer agreed to furnish a tractor but although the dealer's tractor pulled the machine the latter did not work.

Defendant insists that the court erred in directing a verdict for plaintiff on plaintiff's cause of action because the contract obligated plaintiff to furnish defendant "1 Massey-Harris No. 6 Reaper-Thresher 10 ft. complete with Auxiliary Engine and Tractor-Hitch" and that the bundles, boxes and crates that were unloaded by the defendant from the car at Curzon Switch were not the machine sold; that there was never any delivery of such a machine, as the contract contemplated that the machine be assembled so as to be in an operative condition; that defendant never waived the right to have delivered such a machine; that as there was no delivery of the machine purchased there was a failure of consideration for the note and plaintiff was not entitled to maintain the action for the recovery of the possession of the wheat.

Plaintiff contends that "defendant's failure to return the machine to the railroad station where he received it and to notify plaintiff, as provided in the contract, of any failure of the machine to fulfill the warranty and by using the same after the expiration of six days after it was first started constituted an acceptance thereof as in fulfillment of said warranties and the trial court was right in giving the peremptory instructions; . . . that the uncontradicted facts show that plaintiff delivered the reaper-thresher described in the contract to defendant and defendant accepted the same and in view of such facts the trial court was right in holding that plaintiff made delivery thereof in fulfillment of said contract."

The order or contract does not state in what condition the machine was to be shipped to defendant, whether in a knocked down condition or assembled in a condition to do the work. The evidence shows that the machine was of a complicated nature and its setting up and placing in operation was not likely to be understood by the average person. We think that the contract is ambiguous, to say the least, upon the question as to in what condition the machine was to be delivered. The evidence tends to solve that ambiguity in favor of defendant for the reason that plaintiff voluntarily sent Dunbar, assisted by Davis, to assemble the machine and to place it in operation. The fact that

Dunbar was so sent is not contradicted. The parties thus placed their construction upon the contract and we will assume that the contract contemplated the delivery of a fully set up machine in condition to do the work of properly harvesting and threshing wheat in one operation. [13 C. J., pp. 546-550.] Under the circumstances, there was no delivery of the machine unless it was so assembled ready to do the work. As the testimony shows that it was claimed for this machine that it was properly adapted and fitted to perform the harvesting and threshing of wheat in one operation, the inference to be drawn is that the machinery was never properly assembled. If defendant's testimony is to be believed the machine did not do the work properly and he never accepted it, and in fact delivery was never tendered to him, but plaintiff's agent or agents, after making several unsuccessful efforts to make the machine work after they had assembled it or attempted to properly assemble it, abandoned it in the field.

While the evidence shows that defendant and his servant assisted the representatives of the plaintiff in the latter's efforts to make the machine work, there is an inference from the testimony that this was merely to help the latter out in their endeavors. The jury could say that defendant and his servant were merely assisting the representatives of plaintiff in the matter and did not take charge of the operation of the machine. It was therefore, a question for the jury, whether the machine actually purchased was ever delivered or delivery of the machine shipped was accepted by defendant and unless the machine contracted for was shipped or defendant accepted the one actually shipped, although it did not comply with the contract, the consideration for the notes given by defendant failed. [35 Cyc., p. 540.]

Plaintiff was not entitled to recover the wheat if there was no delivery of the machine. For in that event there was no complete sale. The matter of defendant's complying with the terms of the warranty in the respect in which plaintiff claims that he should, is not material for the warranty contained in the contract did not come into play until a sale of the machine was consummated.

A warranty has been defined to be an express or implied statement of something which a party undertakes shall be part of the contract, and, though part of the contract, collateral to the express object of it. [Benj. on Sales, 600; Flint-Walling Co. v. Ball, 43 Mo. App. 504, 509, 510.] The distinction between a breach of warranty and a non-compliance with a contract by failure to deliver the thing purchased is well stated by Lord Abinger in the case of Chanter v. Hopkins, 4 M. & W. 399, 404, as follows:

"A good deal of confusion has arisen in many of the cases on this subject, from the unfortunate use made of the word 'warranty.' Two things have been confounded together. A warranty is an express or implied statement of something which the party undertakes shall be a part of a contract; and though part of the contract, yet collateral

to the express object of it. But in many of the cases, some of which have been referred to, the circumstances of a party selling a particular thing by its proper description, has been called a warranty; and the breach of such contract, a breach of warranty; but it would be better to distinguish such cases as a non-compliance with a contract which a party has engaged to fulfill; as, if a man offers to buy peas of another, and he sends him beans, he does not perform his contract; but that is not a warranty; there is no warranty that he should sell him peas; the contract is to sell peas, and if he sends him anything else in their stead, it is a non-performance of it.''

A failure on the part of defendant to fulfill the conditions of the contract relative to breaches of warranties is immaterial, in view of defendant's evidence that there was no delivery, and therefore, no completed sale of the machine. [Wood Moving Machine Co. v. Gaertner, 63 Mich. 520; Inman Mfg. Co. v. Am. Cereal Co., 124 Ia. 737; Fairbanks v. Richardson Drug Co., 42 Mo. App. 262; Kitson Machine Co. v. Holden, 74 Vt. 104; Lumry v. Kryzmarzick, 48 N. D. 234.]

Defendant was not required to return the machine to Curzon Station for under his testimony there was no delivery of such a machine as was contemplated by the contract when defendant received it in a partially knocked down condition at that point and hauled it to his farm. If it was the intention, under the terms of the contract, that a machine set up ready to use and fit to harvest and thresh wheat was to be delivered, then in receiving the knocked down machinery defendant accepted a conditional delivery, rather as bailee than vendee, for the purpose of enabling plaintiff to complete its contract. [Kitson Machine Co. v. Holden, supra.]

Under all of the circumstances, the issues in this case, including the question whether or not there was a delivery of the machine contracted for, were for the jury. [Clark v. Shannon et al., 117 Ia. 645; Gibbons v. Robinson, 63 Mich. 146.]

In defendant's assignments of error a point is made that the court erred in refusing to permit defendant to introduce evidence in support of his counterclaim based upon special damages alleged to have been suffered by him as a result of plaintiff's breach of the contract of sale. However, nowhere in the brief is this assignment developed and it will, therefore, not be considered by us. The judgment in favor of plaintiff on plaintiff's cause of action is reversed and the cause remanded, but as defendant has abandoned any contention in reference to his right to a counterclaim, the judgment against him as to the counterclaim is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.