AMERICAN EMPLOYERS INSURANCE CO., APPELLANT, v. MANUFACTURERS AND MECHANICS BANK ET AL., RESPONDENTS.—85 S. W. (2d) 174.

Kansas City Court of Appeals. June 24, 1935.

*Hackney & Welch* and *Clyde J. Linde* for appellant.

*Wilson, Bundschu & Bailey* for respondents.

SHAIN, P. J.—This is a cause of action wherein the appellant, hereinafter designated as plaintiff, seeks to recover from respondents,

hereinafter designated as defendants, by way of subrogation for moneys paid out by the plaintiff on an indemnifying bond.

The plaintiff issued a policy of insurance indemnifying the Chamber of Commerce of Kansas City, Missouri, a corporation, against loss of money or other personal property through fraud, dishonesty or wrongful abstraction of any employee of said Chamber of Commerce.

The Chamber of Commerce sustained a loss of $1598 through the wrongful act of one Bellamy, its employee, and the plaintiff here paid said amount to the Chamber of Commerce. Under its policy of insurance, it became subrogated to the rights of the insured to recover said amount from the wrongdoer, and the Chamber of Commerce assigned its said right to the insurer.

The evidence discloses that one of the activities of the Kansas City Chamber of Commerce is to conduct an annual campaign for charity funds. These funds are then allotted to the various accredited charitable organizations in the city and county. One of these was the Kansas City Provident Association which received money from the Kansas City Chamber of Commerce, operating in this particular feature of its activities through its so-called "Charities Bureau." One of the activities of the Kansas City Provident Association is to give aid to destitute persons, whether residents of the city and county, or unfortunate persons residing elsewhere, temporarily in need of assistance while here. The County Court of Jackson County subscribed $18,000 for the year 1930 to the charities fund. There being some question in the mind of the County Court whether it could lawfully give this amount to a private corporation, such as the Kansas City Chamber of Commerce for distribution to private charities, the matter was handled in this fashion. The charities bureau of the Chamber of Commerce advanced sums of money to the Kansas City Provident Association, from time to time, according to its allotment. There was testimony that this amount greatly exceeded the amount of the county's subscription. The Provident Association would then render a monthly statement to the county court in amount of $1500, setting out therein the names of persons and amount of relief contributed by it, acting somewhat in the capacity of agent of the county court in rendering such aid, the total amount of such aid amounting to $1500 each month, but not being the total amount of all aid given by the Provident Association. The county court would then issue its warrant on the county treasurer, to the order of Kansas City Provident Association, in the amount of $1500, payable out of the "pauper fund." It frequently happened that this fund was exhausted and the warrant had to be held some length of time until tax moneys were received and the "pauper fund" was replenished. The Provident Association made no entry of any kind in its books of this amount, or was any record kept of this warrant,

but its officer immediately put an assignment thereon and mailed it to the charities bureau of the Chamber of Commerce. The assignment placed thereon was as follows:

FOR VALUE RECEIVED, I ASSIGN THE
WITHIN WARRANT TO

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
this . . . . . . Day of . . . . . . . . . . . . ., 19. . . .
THE KANSAS CITY PROVIDENT ASSOCIATION
WILLIAMS VIALS, Cashier.

The assignment of the warrant in controversy, presently to be mentioned, appears, from the photostatic copy preserved in the printed record, to have been made with a rubber stamp, except for the signature of Mr. Vials, and the word "Cashier" and the date, 1— Feb., —30, all of which are written in ink, in the handwriting of Mr. Vials.

Having made this assignment in blank, it so reached the charities bureau of the Chamber of Commerce. No credit appears to have been given the Provident Association by the charities bureau for this warrant.

The charities bureau, in 1930, was in charge of a Mr. Pfeiffer, and had six or eight employees, consisting of a cashier, assistant cashier, bookkeeper or accountant and collectors, whose business it was to keep a record of all donations to the charities drive, to collect same, and keep an accounting of the manner of their expenditure. Among the six or eight employees were a Mrs. Reuland, assistant cashier, and a Mr. Bellamy, accountant or bookkeeper. Among the duties of the assistant cashier were to have custody of checks and other receipts; Mr. Bellamy was the general bookkeeper and had access to a box in which Mrs. Reuland kept warrants, checks and other evidences of indebtedness awaiting payment. Mr. Pfeiffer also had access to this box, which was kept in a safe at night, but in daytime was kept at Mrs. Reuland's side on her desk, in a sort of cashier's cage.

On January 29, 1930, the County Court of Jackson County issued to the Kansas City Provident Association its warrant for $1500, being numbered 7410, on presentation of a statement of items of $1500 spent by the Provident Association in aiding destitute persons. This warrant was drawn on the Jackson County Treasurer and ordered him to pay said amount out of the "pauper fund."

The record shows that this warrant was presented to the County Treasurer of Jackson County for payment, on January 30, 1930, but the "pauper fund" was exhausted on that date, and the county treasurer endorsed on the back of the warrant the following:

"This warrant presented for payment. Fund Exhausted. Registered No. 1223, Jan. 30, 1930, HARRAY A. STURGES, Treasurer."

The purpose of the presentation was that, in the event the fund was exhausted, the warrant would draw interest at six per cent per annum from date of presentment only, until paid.

This warrant having reached the Charities Bureau of the Chamber of Commerce of Kansas City, with these endorsements on it, it was the duty of Mrs. Reuland to retain custody of it until it was ready for payment. It was the duty of Bellamy to check up with the county treasurer and ascertain when funds were available to pay this and other warrants, out of the "pauper fund." It was also his duty to make monthly statements for the inspection of his superiors of the assets on hand, contained in the strong box on Mrs. Reuland's desk. For this purpose, he had access to the box and would list this and other warrants. It was also his duty to check Mrs. Reuland and see that she had on hand the deferred obligations called for by the books of account which he kept. Auditors checked Bellamy's record semi-annually.

When Bellamy ascertained that the "pauper fund" was able to pay any of these county warrants, it then became his duty to notify Mrs. Reuland, and it was her duty to start the warrant on the road to payment. She did this by stamping on the back thereof, "Pay Commerce Trust Co." and deposit in said bank to the account of Townley Culbertson, cashier of the charities fund. The bank then collected from the county treasurer and the charities fund received credit in the account of Mr. Townley Culbertson, cashier. There was testimony that no one had any authority whatever except to deposit these county warrants to Mr. Townley Culbertson's account, and that this duty was usually performed by Mrs. Reuland, when Mr. Bellamy notified her that the county was in funds and the warrant would be paid. At times, she had in her possession in the box on her desk obligations unpaid to the amount of $20,000.

Mr. Pfeiffer testified that on two occasions Mrs. Reuland was ill and he had directed Bellamy to make the deposit of county warrants to the account of Mr. Townley Culbertson, which was done. That Bellamy on those occasions had authority to put the regular deposit stamp on the back of the warrants.

Warrant No. 7410, out of which this controversy arose, remained in the possession of the Charities Bureau from approximately February 1, 1930, until March 9, 1931, when Bellamy ascertained that funds were on hand in the county treasurer's office to pay it. From this point the evidence is at variance as to just what transpired. And, as it presented an issue for the jury to solve, it is necessary that the evidence most favorable to the defendant on this issue, be considered.

The appellant here contends that Bellamy simply extracted the warrant from the strong box, while Mrs. Reuland was at lunch, in-

serted his own name in the blank space left for the name of the assignee, with a typewriter; endorsed it and started it on its way to payment. He did this by procuring a friend, named Courtney, to endorse it and take it to his (Courtney's) bank, the respondent Manufacturers & Mechanics Bank, and leave it there for presentation and collection. Bellamy represented to Courtney, with whom he was engaged in church work, that he had no bank account of his own, and asked Courtney to do it for accommodation. Courtney had previously loaned Bellamy $200 cash, and Bellamy told Courtney that the Charities Bureau had paid him the warrant for some special work, and he wanted to get it cashed and pay Courtney the $200 that he owed. The respondent bank mailed the warrant to the county treasurer, and in due time, it was paid, and the bank credited the amount $1598 to Courtney's account, which he maintained in the name of a small business he operated. Of this $1598, Courtney retained the $200 loan and five dollars which Bellamy told him to keep for the accommodation in making the loan, and gave Bellamy a check for the balance, which the latter cashed. The net result is that neither the respondent bank nor respondent Courtney profited anything from the transaction, but, at most, acted as agent for Bellamy in making the collection from the county treasurer.

Mr. Pfeiffer, the secretary of the Chamber of Commerce, in charge of the Charities Bureau, after testifying to the fact that Bellamy had access to the strong box for the purpose of listing county warrants, and to the two occasions when Bellamy was authorized to take county warrants, stamp the deposit stamp on them and deposit them to Mr. Townley Culbertson's account, also testified that he had been mistaken when he testified that Mr. Bellamy had been instructed to take this particular warrant, when it was learned that funds were on hand to pay it, and have the Provident Association endorse it; that he had since learned that Mr. Vials put the assignment in blank on it when he sent it over to the Charities Bureau February 1, 1930. He then testified:

"Q. You didn't know whether it was endorsed or not? A. That is right.

"Q. But you probably did tell him to take it and cash it? A. Not cash it.

"Q. Well, deposit it? A. Deposit it, yes, sir."

There is therefore evidence that Bellamy was entrusted with this particular county warrant, having an assignment on the back, with the name of the assignee left blank; and that, instead of depositing it to Mr. Culbertson's account, as directed and as he had done before, he entered his own name as assignee and secured the money on it through the defendants.

The plaintiff in its petition bases right of recovery on allegations that John E. Courtney and defendant, acting in concert and to the end of cashing the county warrant in question and in deference of the rights of the Chamber of Commerce, owner of said warrant, wrongfully converted said warrant to their own use, etc. The plaintiff further pleads its loss, by reason of aforesaid premises, in the sum of $1598 and prays judgment against defendants for same.

The defendants, by way of answer, made general denial and further plead as follows:

"Further answering, the defendant alleges that the injuries complained of in plaintiff's petition were caused by the carelessness and negligence of the Chamber of Commerce of Kansas City, Missouri, in that the said warrant was not properly assigned by the Kansas City Provident Association, but was assigned in blank and allowed to so remain in the custody and control of William R. Bellamy, an employee of said Chamber of Commerce, that said Bellamy was permitted over a long period of time to accept warrants so assigned in blank and permitted from time to time to fill in the name of the assignee and cash said warrants, all of which was known to the said Chamber of Commerce; that warrants in large amounts so assigned in blank were over long periods of time allowed to remain in the custody and control of the said William R. Bellamy without proper and adequate check or supervision; that said practice constituted an ever present opportunity and inducement toward the misappropriation of said warrants, whereas, had they been properly assigned as required by law the said misappropriation could not have occurred; and said acts of negligence on the part of the plaintiff's assignor directly contributed to cause the loss of which the plaintiff complains.

"Further answering, your defendant alleges that the Provident Association of Kansas City assigned and delivered said warrant in blank to said Chamber of Commerce without the name of the assignee being inserted therein; that William R. Bellamy, an employee and agent of said Chamber of Commerce, was authorized to fill the name of the assignee in said warrant after the same was assigned and delivered in blank, and such practice was well established and through a long course of similar transactions the said Chamber of Commerce and the said Provident Association approved, acquiesced and established the practice and custom for the said Bellamy to fill in the name of the asssignee in the blank space left in said warrant and other similar warrants for the name to be inserted; that the defendant became a bona fide holder of said warrant after the name of William R. Bellamy had been inserted therein and the assignee by the said Chamber of Commerce and its duly authorized agents, and plaintiff is estopped and should not be permitted to recover from

the defendant when such innocent third party, the defendant herein, accepted said warrant and paid out the face value of the same in consequence of the negligent execution of said warrant, the negligent practice in handling such warrant and similar warrants, and the fact that the loss, if any, resulted from the acts and conduct of the servant and agent of the said Chamber of Commerce, in whom such confidence and authority had been bestowed that he was thereby enabled to perpetrate the wrong.''

To defendants' answer, the plaintiff filed a general denial.

Trial was by jury resulting in a verdict for defendants. Judgment was entered in accordance with the verdict and plaintiff has appealed.

The plaintiff's assignment of errors as presented under points and authorities are as follows:

''I.

''The court erred in refusing to direct a verdict for the appellant at the close of all the evidence.

''(a) The warrant was nonnegotiable and respondents got no title from the thief who stole it.

''(b) No title passed from the thief to respondents for the additional reason that no legal and valid assignment was made but the warrant was merely endorsed.

''(c) The defense of estoppel does not apply here where a servant stole property to which he had mere access and which remained in possession of the owner. Such defense (although not pleaded by defendants here) applies only when the servant is actually entrusted with property and the owner voluntarily clothes him with *indicia* of ownership so as to mislead the purchaser.

''II.

''The court erred in not directing a verdict for the plaintiff at the close of the opening statements.

''III.

''The court erred in not entering a judgment for the plaintiff *non obstante veredicto.*

''IV.

''The court erred in admitting illegal and improper evidence over appellant's objections pertaining to defendants' Exhibits 'A' and 'B' and regarding the practice of the county treasurer in cashing warrants and in permitting witness Sturges to testify that the stolen warrant was not 'irregular.' ''

As to plaintiff's assignment one, our courts have repeatedly held that county warrants are nonnegotiable instruments. [Sturdivant Bank v. Stoddard County, 58 S. W. (2d) 702, 332 Mo. 571.]

By reason of nonnegotiability, it follows that in action on assigned nonnegotiable instruments defendants are allowed all just set-offs or other defenses which existed in their favor at the time

of their being notified of such assignment. [Isenhour v. Barton County, 190 Mo. 163, l. c. 170, also reported in 88 S. W. 759.]

There is no such issue as above presented in this case. Further, as to plaintiff's assignment one, (b) and (c), the assignment assumes that the warrant in question was stolen.

We have set forth the evidence in this case at some length. From a study of this evidence, we conclude that the question of whether stolen or entrusted was properly submitted to the jury as an issue of fact. Having reached this conclusion, we need not comment on the authorities cited under these subheads.

Plaintiff's assignment two fails to state wherein any error lies and therefore presents no point for consideration. [Martin v. Continental Ins. Co. of City of New York, 256 S. W. 120.]

As to plaintiff's specification three, the same is defective in the same respect as specification two.

It appears that after the verdict, but before the judgment was entered, the plaintiff filed motion for judgment *non obstante veredicto* and, at the same time, filed motion for new trial and in arrest of judgment.

As we conclude that defendants' answer presents a defense to plaintiff's action and that defendants have produced evidence in support of defense plead, the court did not commit error in refusing to sustain the plaintiff's aforesaid motion.

The plaintiff, in specification four, makes claim of error as to admission of defendants' Exhibits A and B and as to evidence of practices of the county treasurer and for permitting witness Sturges to testify that the stolen warrant was not irregular.

In making its claim, the plaintiff fails to specify wherein error lies; fails to point out where the matter complained of can be found and fails to point out wherein the court erred. Such an assignment presents nothing for review. [Martin v. Continental Ins. Co. of City of New York, supra; Williams v. American Exchange Bank, 280 S. W. 720; Johnston v. Ragan, 178 S. W. 159, 265 Mo. 420; City Trust Co. v. Cunningham, 7 S. W. (2d) 456; Kiger v. Sanko, 1 S. W. (2d) 219.]

However, as to Exhibits A and B, we have examined the record and find that the exhibits are offered to show the customary mode of business and conclude that admission was proper. As to the evidence as to practice of the county treasurer and testimony of Sturges, and as no page of where found in the record is given, we are unable to judge as to the exact evidence referred to in plaintiff's specification four.

We find nothing in plaintiff's specifications of error that presents error that would justify a reversal of the judgment.

Having concluded that the evidence presented an issue of fact as to whether the warrant in question was stolen or entrusted to the

employee under such conditions as to confer authority, then in view of the verdict of the jury we become bound by the jury's finding of fact.

The principal contention of plaintiff is that no title passed from Bellamy to Courtney and the bank because no valid assignment was made, as required by law, but it was merely endorsed. [Section 12172, Revised Statutes of Missouri, 1929, is cited. Also Craig v. Mason, 64 Mo. App. 342, by this court.]

Said Section 12172 directs the form of the assignment and provides that no assignment in blank shall transfer any right to a warrant nor authorize any holder to fill up the same.

If measured by this statute, the Chamber of Commerce acquired no *legal* title, nor authority to fill the blank left for name of assignee. However, in the case last cited, this court held that the holder of a warrant without the statutory indorsement thereon, though he has not the legal title, yet, by reason of his possession under claim of ownership, has an equitable title. Under the evidence here, the Chamber of Commerce acquired an equitable title, and could enforce its rights against the wrongdoer. Neither of the respondents ever claimed the *legal* title to this warrant; they were mere agents for Bellamy in its presentation and collection and they profited nothing. The authorities hold that where the warrant or other non-negotiable paper is *stolen*, even the innocent holder acquires no title and will have to pay. But a different situation exists where the owner places the instrument in the hands of a trusted employee with directions to insert the name of the assignee and deposit it for collection, and he does insert the name of an assignee, but inserts his own, and starts it through the bank for collection, even though not the route usually employed by his master. This is clearly a wrongful performance of a duty the employer told him to perform.

The authorities support the ruling that, in a case of this kind, the employer whose act started the train of events that led to a loss, or whose neglect made the fraud possible, must suffer the loss rather than the innocent third party who profited nothing, and at most, acted as a collector for the wrongdoer. [International Bank v. German Bank, 71 Mo. 183; Clifford Banking Co. v. Donovan Comm. Co., 195 Mo. 262, 94 S. W. 527; National Safe Deposit Co. v. Hibbs, 229 U. S. 391, 57 L. Ed. 1241.]

In the case of New York Indemnity Co. v. Andrew Co. Bank, 59 S. W. (2d) 741, this court said:

"What was said by the Supreme Court in Edwards v. Thomas, 66 Mo. 468, in quoting approvingly from another case is applicable here. 'Seeing somebody must be a loser by this deceit, it is more reasonable that he that employs and puts confidence in the deceiver should be a loser than a stranger.' [Horn v. Nichols, 1 Salk. 289.]"

The appellant makes a point that there is a distinction between the present case, involving a nonnegotiable instrument, and cases wherein a negotiable instrument was embezzled by a dishonest employee. The foregoing case of International Bank v. German Bank, involved a nonnegotiable instrument, and Judge NAPTON held that the rule heretofore stated applies.

Defendants make the point that the warrant considered here was void, because the county court was without authority of law to issue it, and that, therefore, action in trover would not lie to recover the value of a worthless warrant. Of this contention, it is sufficient to say that the question of the validity of its issuance need not be considered, because it was treated by all the parties as having value and the county treasurer did give face value for it.

Judgment affirmed. All concur.