MASSEY-HARRIS HARVESTER CO., APPELLANT, v. CHICK QUICK, RESPONDENT.—87 S. W. (2d) 446.

Kansas City Court of Appeals.   November 12, 1935.

*Petree & Wright* and *Samuel Feller* for appellant.

*H. B. Pyle, Lester Vonderschmidt, Gene Thompson* and *K. D. Cross* for respondent.

SHAIN, P. J.—This is a suit in replevin wherein the Massey-Harris Harvester Company was plaintiff and Chick Quick was defendant.

The case involves a contract of purchase on a No. 6 Massey-Harris Reaper-Thresher, commonly known as a combine, and notes given in the transaction one of which was secured by chattel mortgage on growing wheat. The case was once before in this court for review, 42 S. W. (2d) 47.

The original replevin suit was for the possession of the combine and for possession of wheat covered by the chattel mortgage. The defendant's answer denied possession of the combine and admitted plaintiff's right of possession of same. The answer denied plaintiff's right to the possession of the wheat and asked damages for detention of same. The defendant further made claim for damages by way of counterclaim. The judgment was for the plaintiff in the first trial for possession of the combine and wheat and against the defendant on counterclaim. The same was reversed and on the retrial in the circuit court the issue was confined alone to the issue of right of possession of the wheat and damages for detention. Judgment on the retrial was for defendant as to the possession of the wheat and damages in the sum of $513.28 was awarded defendant.

From this judgment the plaintiff duly appealed.

For uniformity, we will hereinafter refer to the appellant as plaintiff and the respondent as defendant.

It is shown that the plaintiff was the holder of notes executed by the defendant and plaintiff's claim of right of possession of the wheat is based upon a chattel mortgage given to secure this indebtedness. The plaintiff asked damages in the sum of $100 for taking and detention.

It appears that possession of the wheat was taken by plaintiff on the replevin writ and defendant answered denying plaintiff's right and asserting his right to possession of the property here in issue and that he was entitled to said possession at the time of the institution of the suit and asks damages of $1500 for the taking and detention thereof. By way of reply, the plaintiff makes general denial of defendant's answer. The plaintiff further replying plead in part, as follows:

"The plaintiff admits that on the 7th day of June, 1928, defendant entered into a contract with plaintiff to purchase one Massey-Harris No. 6 Reaper-Thresher complete with auxiliary engine and tractor hitch for which defendant agreed to pay plaintiff fifteen hun-

dred seventy dollars ($1570) plus freight from Kansas City to Forest City, Missouri, amounting to thirty-eight dollars and seventy-five cents ($38.75)· and defendant was to execute his notes for the amount of the purchase price as follows: One note for seven hundred dollars ($700) due August 1, 1928, and one for eight hundred and seventy dollars ($870) due August 1, 1929, both notes to bear interest at the rate of eight per cent (8%) per annum from July 15, 1928. Plaintiff alleges said notes were executed in accordance with the terms and conditions of said contract and subject to the terms and conditions thereof; that said notes were not taken by the plaintiff in payment of said machinery but only as evidence of the defendant's indebtedness to the plaintiff.

"Plaintiff admits that said contract contains the provisions set out and quoted on pages two (2) and four (4) of defendant's· answer and further admits that said machinery was shipped by plaintiff to defendant at Forest City, Missouri, and that same was unloaded and conveyed to defendant's farm."

The plaintiff in reply further plead and set forth conditions in said contract· and alleged breaches and noncompliance thereof by the defendant.

As to the above quotation wherein the plaintiff "admits" and, especially as to the second paragraph, reference evidently is to the answer in the trial had on the first occasion. There is nothing in the record before us to show what was contained in the former answer and there is nothing herein from which we can determine the matters referred to as "admitted" as shown upon pages two and four of same. We will, of course, under such showing be unable to give consideration of the matters so referred to.

As to the conditions of the contract relied upon by the plaintiff, we conclude that it is not necessary to burden the opinion by setting same out in full. This is so for the reason that the plaintiff in its brief has summarized the same as applied to the issues and we adopt said summary which is as follows:

"Those conditions which may be involved in the determination of this suit provided that in the event the defendant as purchaser should believe and find that the machine did not perform in accordance with the terms and conditions of the contract, including the warranties thereof, that he would immediately notify the plaintiff by letter or telegram, stating the particulars in which the machine failed to comply with the contract. It also provided that the use of the machine after six (6) days after first starting same should be deemed an acceptance thereof and that the machine was fully complying with all the terms and conditions thereof. The contract also provided that no employe of the company could alter or change the contract in any respect, except a branch manager of a branch house or the officers of the company."

The only question involved in this case, we conclude, is tersely and correctly stated in appellant's brief as follows:

"The only question, appellant contends, that should have been determined at the second trial was as to whether or not the plaintiff tendered or delivered to the defendant a 'Massey-Harris, No. 6 reaper-thresher 10 ft., complete with auxiliary engine and tractor hitch and fore carriage,' or that defendant accepted the machine that was delivered to him and if the plaintiff showed these facts, then it was entitled to a judgment for the possession of the wheat involved in this action, because there had been a default in the payment of the $700 note, which was secured by the chattel mortgage on the wheat."

With the issue in this case so clearly stated above, we set forth the plaintiff's assignments of error as follows:

"1. The court erred in overruling plaintiff's motions for a new trial and in arrest of judgment.

"2. The court erred in overruling plaintiff's motion for judgment in *non obstante veredicto.*

"3. The court erred in refusing to give a peremptory instruction directing the jury to return a verdict in favor of the plaintiff and against the defendant as requested by plaintiff.

"4. The court erred in failing to declare as a matter of law, under the undisputed and admitted facts, that plaintiff was entitled to the possession of the wheat in question.

"5. The court erred in giving instruction No. A on behalf of defendant, over the objections of plaintiff.

"6. The court erred in refusing to give instructions No. 1 and No. 2 requested by the plaintiff.

"7. The court erred in admitting, over plaintiff's objections, improper, incompetent, irrelevant and immaterial evidence offered by the defendant to the prejudice of the rights of the plaintiff.

"8. The instructions given by the court to the jury were contradictory, inconsistent and confusing.

"9. The verdict and judgment are against the law and the evidence and contrary thereto and for the wrong party.

"10. The uncontradicted and admitted facts adduced at the trial show that the plaintiff delivered to the defendant the reaper-thresher described in the contract of sale and that the defendant accepted the same. It was therefore the duty of the court to instruct the jury to render a verdict in favor of the plaintiff, and the questions whether or not the machine was shipped in a partly knocked-down condition, or operated in accordance with the warranties contained in said contract were, under the undisputed facts, immaterial and not issues in the case.

"11. That on the whole record of the case the plaintiff was entitled to a judgment and the court erred in rendering judgment in favor of the defendant."

As this cause was tried by a jury resulting in a verdict for the defendant, we, of course, must give consideration alone to the evidence most favorable to the defendant.

The conclusion of the court, touching assignment of error No. 3, will of necessity materially affect conclusions respecting assignments No. 1 and No. 2 and will also determine as to many questions raised by the other assignments.

The contract involved is a conditional sale contract and the clauses therein are so favorable to the vendor that if it be determined that the machine in question, which undoubtedly was tendered to the plaintiff, was complete and reasonably adapted and equipped and capable of doing the work for which it was contracted for to do, or if it be determined that the defendant actually accepted the machine in question, then it follows that defendant cannot escape liability.

The above is true for the reason that if either of the above determining factors be established, then and in such event there is no evidence upon which to base a conclusion that the defendant met the requirements of the contract if a proper machine was tendered to or delivered to him and accepted by him.

With the above in mind, it becomes our duty to search the record and determine as to whether there is any substantial testimony from which it can be reasonably inferred that no such tender was made by plaintiff, or no such delivery to and acceptance by defendant.

In so far as the question of delivery is concerned, the question as to whether shipped in a knocked-down condition has no bearing upon the issue. Again, in so far as the question of acceptance is concerned, the fact that the defendant hauled the machine from the railroad to his farm has no bearing upon the issues herein. All issues of tender, delivery and acceptance must be determined in relation to the fact as to whether the machine when set up and tried out on the farm met the requirements as per the contract. On the questions of tender and delivery as above defined, there appears to be conflicting evidence. For the purposes of review, we need only consider the evidence favorable to the defendant.

The defendant was put upon the stand by the plaintiff and in the course of direct examination testified that he was not given instructions of how to operate the machine by plaintiff's agent and further testified that he never at any time operated the machine. He testified that he ran the motor but at no time put the machine in gear and ran same.

It appears that after it was set up the defendant hauled the machine out to the wheat field. He testified that he had never seen

such a machine in operation and had no experience touching such a machine.

It is shown by the evidence, that a Mr. Dunbar, plaintiff's agent sent out to put up the machine, and a Mr. Davis, a salesman for the machine, came to defendant's farm on July 13th and defendant testified on cross-examination that Mr. Dunbar and Mr. Davis started the machine into the cutting of the wheat. It appears that defendant's Ford tractor would not pull the machine while in operation in the field and a Mr. Bottorff, a salesman for the plaintiff company, offered and did supply a Wallace Cub tractor and in the afternoon the machine was started in the field; the defendant running the tractor and Mr. Davis and Mr. Bottorff operating the machine.

It appears that Bottorff had also been on the job setting up the machine. It appears further that a nephew of defendant was present and was on the machine when started.

The defendant testified that on this tryout the recleaner failed to work. As to this tryout, defendant testified that the machine was not cleaning the wheat and that they pulled the machine part of the way around in the field and couldn't pull it further. Defendant further testified that he hitched on his Ford tractor and pulled the machine up to a fifty acre field on another part of the farm where the machine stood for about a week.

Defendant further testified that Mr. Davis, the salesman, came back and on a second tryout that Mr. Davis started the machine and tried to make it work but could not; that the elevator would not work and would choke up the cylinder and cut the cogs off. Defendant testified that at this tryout the wheat was in good shape.

The defendant further testified that other representatives of the plaintiff company came and tried to adjust and operate the machine and that this continued until September 6th, and further testified that they tried to cut wheat with the machine from July 15th to September 6th at various intervals. Defendant testified that he furnished ample power to pull the machine and that during the tryout he secured a neighbor and two Ford tractors were used to pull the same.

Defendant testified that on these tryouts the machine choked up and that the recleaner, the purpose of which was to separate faulty grains from the good, failed to work and was taken off by plaintiff's agents and discarded and an attempt made to operate without same.

Defendant testified that it was early in the attempt to operate the machine that an agent of the plaintiff took off the recleaner and that thereafter the machine was at all times minus this part.

Defendant testified that Mr. Baxter and Mr. Davis, both testified to as representatives of plaintiff, abandoned the machine down in the field and went off and left it and that they said the wheat could not be cut.

In the course of cross-examination of defendant, the following questions and answers appear:

"Q. On September 6th what did you do? A. I pulled it out of the field and quit.

"Q. Where did you pull it? A. Pulled it up to the barn.

"Q. What was the next communication you had from them? A. Didn't have any more until the latter part of September or first of October.

"Q. What communication then? A. They came out and demanded the money for the machine.

"Q. Did you pay them? A. No, sir, I did not.

"Q. What was ever done with the machine? A. They took it up to Chris Jamison's and left it, I think, one summer, and that fall they sold it, and the next spring they loaded it on a flat car and shipped it to Kansas City. I don't know where it went from there."

Defendant on re-direct examination stated that in all eighty acres was cut by the machine, but testified to many defects, such as is detailed above during the whole operation and defendant testified that the rest of his wheat was cut with a binder.

In the defendant's evidence, given after the close of plaintiff's testimony, there is much evidence in corroboration of the defendant's testimony. The same being of the same tenor the same need not be elaborately set forth herein. From all of defendant's testimony it is shown that defendant and his employees operated the tractors that the machine was hooked up to.

The defendant was put upon the stand for the defense and on cross-examination testified in substance as follows:

"When they first started to cut the wheat it was in good shape, no weeds in it, but I don't know about the ripeness of it. The wheat was in good shape, stood up straight. I didn't pay much attention to the straw spreader to see if there was anything the matter with it. I was along with it the first day, when it began the first tear down, and then they quit for a few days. I don't think I was there when they started again, but I was there off and on all the time. I don't know just how soon I was there after they started the second time, but I would go over quite often. It throwed over some wheat then, the ground was just covered with wheat."

"I would not say this machine cut and threshed the wheat, I would just call it a kind of mixed-up job. It cut part of the wheat and mashed down the balance of it; it did not cut all of it, after they got down on the lower part of it, it would not cut near all of it. The wheat on the lower part was in pretty bad shape. I don't think it was down, the weeds was so high it could not fall down. The weeds were not as high as a man's head, but they were a foot or a foot and a half above the wheat, but there was trouble all over, as far as that is concerned."

. William Prusman, testifying on behalf of defendant, said in substance as follows:

"I saw the machine in operation about an hour, about the middle of July, or a few days later. I got on the machine and rode around with them. I got on at the north end of the field and rode south on the machine, and the machine was working all right, and when I got on the south end I walked back, and there was the ground full of wheat behind the machine. The wheat standing was in good shape; it was good and dry. The wheat that was lying on the ground was wheat that had gone through the machine and come out with the straw. There was quite a bit of wheat on the ground, I couldn't tell just how much, it was pretty thick. I didn't notice anything else about the machine."

The defendant produced testimony that disclosed, judging by the sprouting of the scattered wheat on the field where the machine had been used, there was more wheat left scattered on the ground than you would want to seed on even in thin places and that there was, in the opinion of the witness, no spot but what there was enough seed on the ground.

Based upon the above narrated and set forth testimony, we must determine the issue as to whether or not the same is sufficient to allow defendant to go to the jury on the question that plaintiff states is the only question to be determined.

In determining the question of tender or delivery and acceptance, we must give full consideration to the fact that plaintiff's agents were sent to the farm to assemble the machine and put same in a condition to tender to the defendant. There is no question but what the machine that was assembled on the farm was tendered to defendant.

The machine the plaintiff was required to tender under the contract was:

"1 Massey-Harris No. 6 Reaper-Thresher, 10 ft., complete with Auxiliary Engine and Tractor Hitch @ .................$1570.00
"Fore carriage @ ...............................$......"

We conclude that a reaper-thresher complete is a machine that can be taken into a field and reasonably perform the function of reaping and threshing grain. In other words, the machine must be so complete as to reasonably do what its very name implies.

We conclude that the evidence in the case at bar raises an issue of fact as to whether or not the machine tendered met such requirement.

We next give consideration touching the question of delivery and acceptance. On this issue we must give consideration of the fact that the evidence, most favorable to the defendant, is to the effect that the plaintiff's employees assumed the duties of trying out and demonstrating the machine's adaptability to do the work of properly or reasonably reaping and threshing grain.

If it was conclusively shown that the plaintiff had fully set up and assembled the machine in question on the farm of defendant and tendered same to him and defendant thereafter undertook to operate and try out the machine himself, for the required time, then there would have been such an acceptance as to have eliminated an issue of fact and same would be declared as a matter of law. If such a course as above had been conclusively shown to have been followed, then the contract would have been fully put in force and such a delivery and acceptance would obligate the defendant to the due performance of every covenant of the contract which placed a duty upon him to perform.

However, there is evidence in this case to the effect that defendant never operated or tried to operate the machine in question. Evidence to the effect that he never even put the machine in gear. The fact that defendant and defendant's employees took their tractors and used the same to pull the machine when it was being tried out or taken out of the field and the fact that defendant started and tried out the motor for the purpose of limbering up the same at the request of the plaintiff agent, as defendant testified to, we conclude is not conclusive of the issue of acceptance. We, therefore, conclude that an issue of fact has been made by the evidence on the question of delivery and acceptance. It, therefore, follows that we conclude it was not error to refuse plaintiff's peremptory instruction.

As we conclude there was an issue of fact and as same has been resolved in favor of the defendant by the verdict of the jury, it follows that if the cause was duly submitted under proper evidence and proper declarations of law the judgment must stand.

We proceed to a consideration of declaration of law.

Instruction A given on behalf of defendant is complained of. The instruction reads as follows:

"The court instructs the jury that if they find and believe from the evidence that under the terms of the contract mentioned in evidence plaintiff was to deliver to defendant a certain combine machine set up, ready to use and fit to harvest and thresh wheat in one operation, and that plaintiff failed to deliver to the defendant such a machine, if you so find, and you further find that defendant never at any time accepted the combine machine which was shipped by plaintiff to defendant, if you so find, then your verdict will be for the defendant."

The plaintiff neither in its assignment of error or under the head of points and authorities points out wherein the instruction referred to the juror a question of construction of contract and does not point out any admitted facts referred to the jury, or wherein said instruction is inconsistent with its instruction No. 3, or wherein the instruc-

tions are rendered uncertain. We find nothing in the argument that satisfactorily supplies wherein the instruction is defective as claimed.

An examination of the instruction shows that it predicates its direction to the finding of issues of disputed facts to findings and beliefs based upon the evidence. We conclude that the instruction does not present error.

The plaintiff cites a long list of cases under its point four, all of which are directed to the question of submitting questions of law and referring construction of contracts to a jury. As we conclude that the instruction is not in error in such respect, we do not burden this opinion by comments on these cases all of which declare prime principles of law.

The plaintiff, under point five, complains of refusal to give its offered instruction number two.

For the purpose of this case, we only need to include herein the last paragraph of said instruction number two, as follows:

"As above stated, the only question for you to decide is whether or not such a machine, so assembled, was delivered or tendered to the defendant by the plaintiff."

In connection with above, we set forth instruction number three, which was asked by plaintiff and given by the court, as follows:

"The jury are instructed that if you find and believe from the evidence at any time during June or July, 1928, the plaintiff, the Massey-Harris Company, shipped to the defendant, Chick Quick, at Curzon Switch, near Forest City, Mo., in a partly knocked-down condition, the machine hereinafter described, and that the defendant went to said Curzon Switch, and loaded said machine onto his wagon and hauled it to his home, and that thereafter the plaintiff sent its agent, Mr. Dunbar, to assemble and set up said machine, and that said Dunbar did so assemble and set up said machine was a Massey-Harris No. 6 Reaper-Thresher, 10 foot, complete with auxiliary engine and tractor hitch and forecarriage, and ready to do the work of harvesting and threshing wheat in one operation, or that thereafter the defendant exercised dominion and control over the same, and used and operated said machine on his own behalf, then your verdict must be in favor of the plaintiff and against the defendant."

It will be noted that instruction No. 2 eliminates the question of defendant exercising dominion and control over the machine, which instruction No. 3 submits to the jury at plaintiff's request.

We conclude that plaintiff's instruction No. 2 presents the issues more favorably for plaintiff standing alone than same would be presented if instruction No. 3 had been given. We find no error in the refusal of said instruction No. 2.

The plaintiff's point No. 6 makes claim of error of admittance of evidence.

It is nowhere pointed out wherein the error lies, as to where said evidence can be found in the record, the assignment is crouched in general terms and does not disclose what objection was made thereto when offered and refers to no page of the record where same can be found.

Such omission precludes the assignment from presenting anything for review. [Martin v. Continental Life Ins. Co., 256 S. W. 120; McElvain v. McElvain, 296 S. W. 460; Blair v. Paterson, 110 S. W. 615, 131 Mo. App. 122; Rubottom v. Pioneer Ins. Co. of America, 227 S. W. 835, 207 Mo. App. 616.]

The plaintiff in the case at bar in its brief specifically cites the Massey-Harris Company v. Quick, 42 S. W. (2d) 47, and calls attention to the fact that, in therein reversing and remanding this case, we defined and specified the questions to be submitted on retrial. The plaintiff not only does this but goes further and states specifically the sole question it contends should have been determined in the trial. After doing all this, the plaintiff in its brief proceeds to raise questions that are outside the issue as plaintiff contends for and, under assignment No. 1, interjects the issue of the promissory notes given, which plaintiff says were not taken by it in payment of the machine in issue. The position taken and matters urged might be very germane to an issue presented in a suit on said notes, but as to the issues, as defined by the plaintiff and accepted by the court in the case at bar, we conclude that the question of consideration as to said notes is not before us and that a consideration of said notes cannot affect the question of pleadings in this replevin suit and does not necessitate the amended answer in this case to be verified, or that said answer must set up the defense of want of consideration for said notes, which the plaintiff avers as not taken by it in payment of the machinery. Having reached this conclusion, we need not comment upon a long line of decisions cited declaring the law of Missouri to the effect that on suit on a promissory note the defense of failure of consideration is characterized as an affirmative defense.

As to plaintiff's claim that a judgment *non obstante veredicto* should have been given, we conclude that the allegations of defendant's answer, if proven, entitles him to a verdict in his favor, and that the refusal of the court to give such judgment was not error.

Concluding as we have that there was an issue of fact under the pleadings and evidence and, from a careful study of the record, finding no reversible error, the judgment should be and is affirmed. All concur.