SAM DIAMANT, APPELLANT, v. HARRY STEIN AND HOWARD J. GREEN, CO-PARTNERS, DOING BUSINESS AS STEIN & GREEN, RESPONDENTS.—116 S. W. (2d) 273.

Kansas City Court of Appeals. March 7, 1938.

*Rosenberg & Brenner* and *Joseph Koralchik* for appellant.

*James P. Aylward, Geo. V. Aylward* and *Terence M. O'Brien* for respondents.

REYNOLDS, J.—This appeal comes to us from the circuit court of Jackson county at Kansas City.

On October 12, 1931, the plaintiff filed his petition in said court against the defendants, Harry Stein and Howard J Green, as partners doing business under the name of Stein & Green, seeking to recover judgment on three separate promissory notes of $375 each, alleged to have been executed by the copartnership, together with interest at the rate of six per cent. per annum from January 23, 1930, one of which notes was set out in each of the three counts of the petition. The notes appear as executed by "Stein & Green By H. Stein."

From a judgment in favor of the defendant, the plaintiff, after an unsuccessful motion for a new trial, appeals.

1176

Verified copies of the notes sued upon, marked "Exhibit A", "Exhibit B", and "Exhibit C", were filed with the petition.

Separate answers were filed by the defendants.

Without going into detail, it may be said that, by both of said answers, the copartnership is denied and that, by the one or the other, it is alleged that the defendant Stein was adjudicated a bankrupt on March 20, 1930, in the District Court of the United States for the Western Division of the Western District of Missouri and was discharged on or about April 13, 1931; that the indebtedness referred to in the various counts of the plaintiff's petition was listed in his schedule in bankruptcy; and that the plaintiff herein was duly notified by the bankruptcy court of such proceeding.

It may be observed that the defendant Green, by his separate answer, made general denial of all of the allegations of the petition and made specific denial that he executed the notes sued upon, either individually or as a member of a copartnership of Stein & Green. He specifically denied that, on January 23, 1930, the date upon which the notes sued upon were executed and delivered and upon which the indebtedness they represent accrued or at any other date set forth in the plaintiff's petition, he was a copartner with the defendant Stein or that he was doing business with the defendant Stein under the name of Stein & Green.

By said answer, he further sets up that any copartnership theretofore existing between him and the defendant Stein had been dissolved on March 31, 1928, and that notice of such dissolution had been given to all creditors of the copartnership to that time, and that the plaintiff was not a creditor of the copartnership but had full knowledge of such dissolution. By such answer, he denies that, from and after said date, the defendant Stein had any authority to create any indebtedness in a copartnership capacity for which he (the defendant Green) was liable or to execute any notes in the copartnership name for which he (the defendant Green) was liable. By such answer, he specifically denies that he at any time ever acknowledged the notes sued upon or the indebtedness for which the same were given as a copartnership obligation with the defendant Stein or otherwise. He further pleads a total failure of consideration for said notes, so far as he was concerned, and the lack of the due presentment of the same to him for payment and a lack of notice to him of their dishonor.

Each of said answers, in addition to the specific matters alleged, denies each and every other allegation of the petition.

The plaintiff separately replied to the separate answers of the defendants and denies therein that the defendant Stein was adjudged a bankrupt as a member of the co-partnership of Stein & Green or that the co-partnership was adjudged a bankrupt as such but alleges that the defendant Stein was adjudged a bankrupt as an individual

and received his discharge as such from the court and sets up that the bankruptcy proceeding in which he was involved did not involve the co-partnership liability for the indebtedness sued upon in the various counts of the petition but involved only the individual liability of the defendant Stein and that, after his adjudication in bankruptcy, he revived his individual liability on the notes sued on by promising and agreeing to pay the same and admitted that they were a partnership indebtedness. By his replies, the plaintiff further alleges that, at the time that the notes sued upon were executed and delivered to him and at the time the indebtedness for which they were given arose, the defendants were holding themselves out or permitting themselves to be held out as co-partners doing business under the style of Stein & Green and denies that he received any notice or had any knowledge of the alleged dissolution of the alleged co-partnership existing between the defendants, on March 31, 1928, or on January 23, 1930, or at any time prior or subsequent thereto, until after the notes sued upon had been executed and delivered to him and the indebtedness for which they were given had accrued, but avers that, at the time the notes sued upon were executed to and accepted by him, he relied upon the fact that the co-partnership between the defendants existed and continued.

In substance there is evidence showing that the defendant Stein is the father-in-law of the defendant Green and that they were engaged as co-partners in the wholesale, ladies' ready-to-wear business at 903 Broadway, Kansas City, Missouri, under the firm name and style, of Stein & Green, from the early part of the year 1926 to March 31, 1928, a period of about two years. They advertised under such name by carrying such name on their stationery and on the windows and doors of their place of business and listed themselves under such name in the telephone directory.

Prior to the formation of the co-partnership between them, the defendant Stein had been engaged in the same business at the same place for many years, either alone or in connection with other parties. The evidence discloses that the plaintiff was in business at 904 Main Street in Kansas City, Missouri, near the place of business of the defendants; that he had an acquaintance with both of the defendants over an extended period of years; that his friendship with Harry Stein particularly had been an intimate and close one; and that he had frequently, during all of the years prior to the co-partnership between Stein and Green and subsequent thereto, lent Stein money to be utilized in his business or otherwise, which had always been repaid. The evidence does not show that he had ever personally had any business relations with the defendant Green.

The evidence discloses that the co-partnership between the defendants had been dissolved by mutual consent and by an instrument in writing duly executed on March 31, 1928; that the defendant Green,

upon such date, retired from said partnership and relinquished to the defendant Stein all of the assets thereof and his interest therein upon the agreement by the defendant Stein to pay and discharge all of the partnership indebtedness; that he thereafter had no connection with said co-partnership or its affairs; that, during the course of the partnership, he had kept a desk in the place of business and assisted in looking after the affairs of the co-partnership; that, upon withdrawing therefrom, he associated himself with the Union Chevrolet Company and devoted all of his time to his business with that company; that, after the dissolution on March 31, 1928, he was no longer at the office of the co-partnership or had anything to do with the conduct of its affairs; that notice of the dissolution of the co-partnership was, at the time that it was made, published in the Kansas City Star, the Kansas City Post, and the Kansas City Times; and that notice thereof was also mailed by letter to the various creditors of the co-partnership and to various credit agencies.

It is true that there is some evidence on the part of the plaintiff that he received no notice of such dissolution and did not know of it; but there is evidence to the contrary, which made such question one for the jury.

The record tends to show that he knew that the defendant Green was no longer about the office of the co-partnership and that he was engaged in the automobile business with the Union Chevrolet Company and was giving his attention to that business and that, by inference, he knew from facts made known to him that Green no longer was a member of said co-partnership, if he had not been directly advised of that fact.

After the dissolution, the defendant Stein continued in charge of the business which had formerly belonged to the co-partnership, under the name and style, "Harry Stein, doing business as Stein & Green." The name of Stein & Green continued upon the windows and doors of his place of business, as throughout the copartnership; and he continued to use the stationery bearing such name of Stein & Green in his business, all over the protest of the defendant Green.

As stated, the evidence shows that the plaintiff had, prior to the co-partnership, been in the habit of financing the defendant Stein and making loans of money to him in various amounts from time to time. There is no evidence that he ever made any loan to the defendant Green at any time or any loan to the co-partnership of which Green was advised. The plaintiff himself testified that he had never at any time had any personal contact with the defendant Green in connection with any loan made.

A short time prior to January 23, 1930, the defendant Stein applied to the plaintiff for a loan to himself of $1500. The loan was provided; and, on January 23, 1930, the defendant Stein, in consideration of said loan, executed to the plaintiff the notes sued up-

on, which notes were executed under the name, "Stein & Green By H. Stein", and delivered to the plaintiff. The plaintiff testified that he made said loan to the co-partnership and not to Stein personally and that he would not have made it except for the fact that Green was a partner, notwithstanding the fact that he had made repeated loans to Stein individually, prior to the partnership and after the dissolution thereof, and had never at any time in connection with any loan made a contract therefor with Green individually.

A short time after the execution of said notes, the defendant Stein, doing business as Stein & Green, filed a voluntary petition in bankruptcy in the District Court of the United States for the Western Division of the Western District of Missouri; and, under said name and style, he was adjudged a bankrupt.

The notes to the plaintiff were listed by the defendant Stein in the schedule of his liabilities filed in said bankruptcy proceeding. The plaintiff was duly notified of such petition and adjudication, both by the plaintiff and by the bankruptcy court. The plaintiff thereafter filed his claim (based upon the notes sued upon) in the bankruptcy court in the bankruptcy proceedings, for allowance against Harry Stein, doing business as Stein & Green. Said claim was entitled, "In the Matter of Harry Stein, doing business as Stein & Green, Bankrupt. In Bankruptcy." At the time of the filing of said claim, he executed a power of attorney to his attorneys handling the matter for him, authorizing them to collect and receive any dividends on said claim. The claim was duly allowed, and a dividend was paid thereon to his attorneys.

The plaintiff testified that, after the defendant Stein filed his petition in bankruptcy and after his adjudication in bankruptcy, he revived his individual liability on said claim by agreeing thereafter to pay the same. The defendant Stein denied any such agreement. That question, therefore, became a question of fact for the jury. The defendant Green testified that he was never advised of the negotiation by his co-defendant of the loan in question or of the giving of the notes therefor; that he never knew anything of such transactions; and that he never received any consideration from said loan or for the execution of said notes.

There was testimony by the plaintiff that, in making the loan in question evidenced by the promissory notes sued upon, he relied upon the fact that the defendant Green was still at such time a member of the co-partnership, by reason of the fact that the original firm name of Stein & Green continued on the windows and doors of the place of business of the defendant Stein and on the stationery being used by the defendant Stein and continued in the listing of the firm in the telephone directory, as showing the continued partnership relation between the defendants.

At the close of the plaintiff's evidence and again at the close of

all of the evidence, the defendants offered separate demurrers to the evidence, which were respectively denied. The cause was submitted to the jury upon instructions for both parties, according to their respective theories, resulting in a verdict for the defendants, upon which verdict judgment for the respective defendants was in accordance therewith duly entered for the defendants, from which the plaintiff, after unsuccessful motions for judgment *non obstante veredicto* and for a new trial, prosecutes this appeal.

OPINION.

The plaintiff makes the following assignments of error:

"I. The Court erred in receiving in evidence over plaintiff's objections certain irrelevant and immaterial evidence and exhibits, to-wit, the testimony of Ethel Burke Engebrecht with respect to the letters sent by her to various New York credit agencies and creditors of the defendants, notifying them of the dissolution of the partnership and respecting and identifying the letters sent by her to the various credit agencies.

"II. The Court erred in refusing to give and to read to the jury plaintiff's requested instruction numbered '1', since there was ample evidence in the record to justify its submission to the jury.

"III. The Court erred in giving the defendants' instruction numbered '1' over the objection of the plaintiff, for the reason that said instruction placed an undue burden upon the plaintiff in requiring him to sustain the burden of the proof with respect to affirmative defenses offered by the defendant.

"IV. The Court erred in giving and reading to the jury defendants' instruction numbered 'N' for the reason that such instruction constitutes a misstatement of the applicable law.

"V. The Court erred in submitting the case to the jury upon conflicting instructions, to-wit, instruction numbered '2' given for the plaintiff and instructions numbered 'H' and 'N' given at the request of the defendants, which tended to confuse and mislead the jury."

The first point made by the plaintiff is as follows:

"The court erred in admitting the testimony of Ethel Burke Engebrecht with respect to the letters notifying credit agencies in New York of the dissolution of the partnership."

1. Neither the first assignment of error made nor the first point made by the plaintiff is sufficient to present any point for review under the repeated rulings of this court and the Supreme Court. Neither discloses what, if any, objection was made to the introduction of the evidence complained of or points out where such evidence may be found in the record. [University Bank v. Major, 229 Mo. App. 963, 83 S. W. (2d) 924; American Employers Ins. Co. of Boston, Mass. v. Manufacturers & Mechanics Bank, 229 Mo. App. 994, 85

S. W. (2d) 174; Artz v. Bannan (Mo. App.), 71 S. W. (2d) 795; Scott v. Missouri Pac. Railroad Co., 333 Mo. 374, 62 S. W. (2d) 834; Massey-Harris Harvester Co. v. Quick, 229 Mo. App. 1136, 87 S. W. (2d) 446; Young v. Wheelock, 333 Mo. 992, 64 S. W. (2d) 950; Christine v. Luyties, 280 Mo. 416, 217 S. W. 55.]

A point made in an appellant's brief regarding the inadmissibility of evidence will not be considered on appeal where no such objection was made in the court below. [Scott v. Missouri Pac. Railroad Co., *supra.*]

2. The plaintiff's second assignment of error fails to charge how or in what manner the trial court committed error in refusing its requested instruction No. 1.

The plaintiff merely contents himself with saying that there was ample evidence in the record to justify the requested instruction. He does not specify such evidence or refer to the places in the record where it may be found. The assignment is too general and does not show in detail the alleged error. [University Bank v. Major, *supra*; State v. Kelly (Mo.), 107 S. W. (2d) 19, l. c. 21, Section 7; Langston v. Howell County (Mo.), 108 S. W. (2d) 19.]

3. The second point made by the plaintiff is as follows:

"The court erred in refusing to give and read to the jury plaintiff's requested instruction No. 1 since there was ample evidence in the record to justify it and since it constituted the converse of defendants' instructions numbered H and N."

The same vice exists in point 2 as in the plaintiff's assignment of error. It is general and is not specific. The plaintiff merely contents himself with saying that there is ample evidence in the record to justify it and does not point out what such evidence is or where it may be found in the record. It adds the further ground, not embraced in the assignment, that the requested instruction constituted the converse of the defendants' instructions H and N. It does not point out what the defendants' instructions H and N were nor how or in what manner the requested instruction constituted the converse of the defendants' instructions H and N.

We will not search the record to find whether or not the plaintiff's requested instruction was the converse of the defendants' instructions H and N. The point made is too general and is not sufficient to bring up anything for review. [Christine v. Luyties, *supra;* University Bank v. Major, *supra;* Massey-Harris Harvester Co. v. Quick, *supra*; Scott v. Missouri Pac. Railroad Co., *supra.*]

4. The third point made by the plaintiff is that the court erred in giving the defendants' instruction L over the objections of the plaintiff, for the reason that said instruction placed an undue burden upon the plaintiff in requiring him to sustain the burden of proof with respect to affirmative defenses offered by the defendants. The instruction is not subject to the criticism made. It nowhere

purports to place upon the plaintiff the burden of proof with respect to any affirmative defense offered by the defendants. It merely advised the jury that the burden of proof was upon the plaintiff to sustain by a preponderance of the evidence the issues necessary to his case, the burden to establish which rested upon him. The burden of proof, if correctly understood, is the duty that rests upon a party asserting the affirmative of an issue to establish such issue by a preponderance of his evidence. This duty remains with the party holding the affirmative until the end of the trial. [Ranney v. Lewis, 182 Mo. App. 58, 167 S. W. 601.]

The language of the instruction complained of seems to conform to the suggestion made by the Supreme Court in Rouchene v. Gamble Construction Co., 338 Mo. 123, 89 S. W. (2d) 58, l. c. 63, wherein it quotes from Mitchell v. Dyer (Mo.), 57 S. W. (2d) 1082, l. c. 1083, as follows: " 'A short, simple instruction, telling the jury that the burden is on plaintiff to prove his case by a preponderance or greater weight of the credible evidence, and that unless he has done so the jury must find for defendant, ought to be sufficient to inform the jury what plaintiff is required to do.' " In view of the suggestion so made by the Supreme Court, the instruction complained of in this case appears to be unobjectionable.

5. The fourth point made by the plaintiff is that the court erred in giving and reading to the jury the defendants' instruction N for the reason that such instruction constitutes a misstatement of the applicable law. The assignment of error upon which such point is based is in the same language. The point is too general to present anything for review. [Langston v. Howell County, *supra*; University Bank v. Major, *supra*; Christine v. Luyties, *supra*; Massey-Harris Harvester Co. v. Quick, *supra*; Scott v. Missouri Pac. Railroad Co., *supra*; American Employers Ins. Co. of Boston, Mass. v. Manufacturers & Mechanics Bank, *supra*; State v. Kelly, *supra*.]

It does not specify how or in what manner such instruction constitutes a misstatement of the applicable law. It does not point out the applicable law or the misstatement thereof.

6. The fifth point and the fifth assignment made by the plaintiff are the same and are as follows:

"The court erred in submitting the case to the jury upon conflicting instructions, to-wit, instruction numbered '2' given for the plaintiff and instructions numbered 'H' and 'N' given at the request of the defendants, which tended to confuse and mislead the jury."

Here again both the assignment and the point made are general and indefinite and fail to point out any error in the instructions. It is not specified how or in what manner the instructions conflicted or how or in what manner they tended to confuse and mislead the jury. Neither the assignment of error made nor the point based thereon

is sufficient to present anything for review to the court. [Langston v. Howell County, *supra*; University Bank v. Major, *supra*; Scott v. Missouri Pac. Railroad Co., *supra*.]

We have disposed of all the assignments of error and points made by the plaintiff on this appeal and in each instance, under the rules of this court, have found against the plaintiff.

7. Rule 15 of this court requires that, in all cases, the appellant, or plaintiff in error, shall file with the clerk of this court on or before the day next preceding the day on which the cause is docketed for hearing, seven copies of a printed abstract or abridgment of the record in said cause, setting forth so much thereof as is necessary to a full understanding of all the questions presented to this court for decision, together with seven copies of a brief containing in numerical order the points or legal propositions relied on, with citation of such authorities as counsel may desire to present in support thereof. By said rule, the appellant, or the plaintiff in error, is required to deliver a copy of said abstract, brief, points and authorities to the attorney for the respondent, or the defendant in error, at least twenty days before the day on which the cause is docketed for hearing and the counsel for the respondent, or the defendant in error, is required, at least eight days before the cause is docketed for hearing, to deliver to the counsel for the appellant, or the plaintiff in error, one copy of his statement, brief, points and authorities cited, and such further abstract as he may deem necessary and shall, on or before the day next preceding the day on which said cause is docketed for hearing, file with the clerk of this court seven copies of the same.

By Rule 16, it is provided that, in compliance with Section 863, Revised Statutes of 1899, now Section 1060, Revised Statutes of 1929, the statement filed by the appellant shall consist of a clear and concise statement of the case without argument, reference to issues of law, or repetition of testimony of witnesses. That statement shall be followed by the brief, which shall contain a statement of the points on which the appellant relies for a reversal of the judgment. In citing authorities in support of any proposition, it shall be the duty of counsel to give the names of the principal parties to any case cited from any report of adjudged cases, as well as the number of the volume and the page where the same will be found.

By Rule 17, it is provided that the brief on behalf of the appellant, or plaintiff in error, shall distinctly and separately allege the errors committed by the inferior court, and no reference will be permitted in the oral argument to errors not thus specified, nor any reference by either counsel to any authority not cited in his brief, unless for good cause shown the court shall otherwise direct.

By Rule 18, it is provided that, if any appellant, or plaintiff in error, in any civil cause shall fail to comply with the provisions of Rules 14, 15, 17, and that part of Rule 16 relating to the statements,

1184

the court, when the cause is called for hearing, will dismiss the appeal, or writ of error, or at the option of the respondent, or defendant in error, continue the case at the costs of the party in default.

8. The brief of the appellant in this case wholly fails to comply in any respect with Rules 16 and 17 of this court, above noted. Where such is the case and the assignment fails to set out where in the record the action complained of may be found, it has been held that the assignment is insufficient. [Christine v. Luyties, *supra*; Barnett v. Hastain (Mo.), 256 S. W. 750; American Employers Ins. Co. of Boston, Mass. v. Manufacturers & Mechanics Bank, *supra*.]

It has been repeatedly held that the appellant's assignments must point out the error and state how or why the action of the court was erroneous or they are insufficient. [University Bank v. Major, *supra*; Waters v. Gallemore (Mo. App.), 41 S. W. (2d) 870, l. c. 872; Scott v. Missouri Pac. R. Co., *supra*; Massey-Harris Harvester Co. v. Quick, *supra*.]

It has been held that an assignment of error to the effect that an instruction constitutes a misstatement of the applicable law is insufficient to preserve the point for review. [Weaver v. Stephens (Mo. App.), 78 S. W. (2d) 903, 905; Miller v. Mutual Life Ins. Co. of N. Y. (Mo. App.), 79 S. W. (2d) 750; Langston v. Howell County, *supra*.]

There remains nothing for us to do but to affirm the judgment of the trial court. The judgment of that court should be affirmed. It is accordingly affirmed. All concur.